(92 App. Div. 587.)

### MAIER v. REBSTOCK.

(Supreme Court, Appellate Division, Fourth Department. March 15, 1904.)

1. VENDOR AND PURCHASER—CONTRACT FOR RECONVEYANCE—PERFORMANCE—REASONABLE TIME.

Where, at the time of the sale of certain real estate, the vendor agreed that, if at the end of three years the purchaser could not sell the property at an advance to cover 6 per cent. interest on the investment, the vendor would take the land back, and refund the money, with 6 per cent. interest, and other expenses, the purchaser was entitled to a reasonable time after the expiration of such three years in which to elect to enforce such agreement.

**2. SAME—QUESTIONS FOR JURY.**

In an action to enforce a vendor's agreement to repurchase the land if the purchaser should not be able to sell the same at an advance within three years, facts *held* to require submission to the jury of the questions whether the purchaser had used reasonable efforts to sell the land within the time, and whether the vendor had acquiesced in the purchaser's delay of five years after the expiration of the contract period in demanding a repurchase.

**3. SAME—CONVEYANCE.**

Where plaintiff purchased certain land from defendant under the latter's agreement to repurchase the same in case plaintiff did not sell the land at a profit within three years, and shortly thereafter plaintiff transferred an interest in the land, or the profits which might accrue therefrom, to his brother, plaintiff was only entitled to enforce defendant's agreement to the extent of his interest.

**4. SAME—EVIDENCE.**

Where, after purchasing land under a contract by the vendor to repurchase in case the vendee could not resell the same at a profit within three years, the vendee transferred a portion of his interest in the land to his brother, who paid the vendor one-half of the cash payment, together with one-half of the bond and mortgage, and taxes falling due from time to time, and both brothers conferred with defendant concerning the sale of the land, letters of the purchaser's brother to defendant with reference to the land, and defendant's offer to him to take the land back, were admissible as against the purchaser.

McLennan, P. J., and Stover, J., dissenting in part.

Action by Charles W. Maier against Joseph H. Rebstock. After verdict in favor of plaintiff, a motion for a new trial was ordered to be heard in the Appellate Division in the first instance. Motion granted. See 73 N. Y. Supp. 817.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

Clarence A. McDonald, for plaintiff.

Arthur W. Hickman, for defendant.

SPRING, J. On January 10, 1893, defendant conveyed to the plaintiff a parcel of land situate in the city of Buffalo for $720. Of the purchase price, $220 were paid in cash, and $500 were secured to the vendor by the bond and mortgage of the vendee, due in three years from date. Contemporaneous with the delivery of the conveyance, the vendor executed, as a part of the consideration of the transaction, the following instrument:

> "Buffalo, N. Y., Jan'y 10th, 1893.
>
> "Guarantee to Chas. W. Maier.
>
> "I hereby agree, if at the end of three (3) years you can't sell at an advance to cover six (6) per cent. interest on investment I will take the land back and refund the money also pay you six (6) per cent. interest and all other expenses connected with transfers, recording, etc.
>
> "Joseph H. Rebstock,
> "Per S. J. Rebstock, Atty."

The plaintiff claims that he has been unable to sell the land, and has sued upon the agreement to recover the purchase price and taxes which from time to time have been levied upon the land and paid by the plaintiff. By the terms of the agreement, the three years stipulated therein

expired on January 10, 1896, but the present action was not commenced until July, 1901. On the trial the court directed a verdict for the plaintiff for the full amount of the purchase price, together with interest and the taxes paid, including interest thereon. In this we think the court erred. As we interpret the agreement, the plaintiff had a reasonable time after the expiration of the three-years limitation in which to reconvey the land to the defendant. He was not permitted to make an election to await a favorable turn in the selling price, and still keep his grip on the liability of the defendant. What is a reasonable time, in view of all the circumstances, is ordinarily for the jury to determine. Pierson et al. v. Crooks et al., 115 N. Y. 539, 551, 22 N. E. 349, 12 Am. St. Rep. 831; Grabfelder v. Vosburgh (decided at the present term of this court) 85 N. Y. Supp. 633.

The plaintiff allowed five years to elapse before endeavoring to hold the defendant on the agreement. If nothing had transpired in the interim indicating that the defendant acquiesced in this delay, or allowed the time to run along, realizing that his liability continued, then, as matter of law, he would be absolved therefrom. A brief review of the conduct of the parties after the expiration of the three-years limitation will aid us in appreciating the real situation:

The plaintiff testified to his fruitless efforts to sell the land during the three years, and that he continued his efforts thereafter. In February, 1896, which was shortly after the expiration of the time period in the agreement, he put the lots for sale in the hands of real estate dealers in Buffalo, and for a year and a half they had charge of the property as selling agents, but made no sale. The plaintiff testified he never had any offer for this property, except he states in a letter that he was once offered $4 a foot, which was far below the purchase price. He has testified that he often talked with the defendant in regard to the prospect of selling this land, and was advised that it was good. He saw him once or twice each year down to 1899 or 1900 in reference to selling the land, but was unable to make any sale. He resided in Seneca Falls, and knew but little concerning the value of the land, while the defendant was a resident of Buffalo, and apparently familiar with the selling value of property of this kind, and appreciated the difficulty in disposing of it. Whenever the plaintiff was in Buffalo he met the defendant, and they talked over the situation in reference to this land. On the 7th of February, 1901, he wrote to the defendant:

"As you know we have been trying to sell them ever since we bought but have never had but one offer and that was $4.00 a foot."

He then called attention to the agreement of the defendant to "take the lots back" if they were unable to sell within the three years. He then adds:

"We have held off, thinking perhaps that we could get rid of them, but as there don't seem to be much prospect, thought that I would write you, and get the thing closed up."

The defendant replied to this and another letter, not in evidence, saying he had "been making inquiries"; that real estate was "picking up and there is no question that you will be able to sell, and I think at a profit, this summer." It will be noted that the defendant does not

claim that the plaintiff had elected to return the land, or that the agreement had become inoperative by lapse of time. The plaintiff thereupon wrote two letters to the defendant, advising him that he desired to reconvey the land, and receive the purchase price and expenses, in accordance with the contract of the defendant. He says in the letter of February 20th:

"The 6 per cent. investment under your guarantee is profit enough for me, and I want to settle the thing up. Our agreement, when I bought the lots, was that you would take them off my hands, if I were unable to sell them, and this is what I want you to do. If, as you think, values will rise, you will be the gainer. You are on the ground and can look after them, while I am not, and could not watch the market so as to know when was the best time to dispose of them. In thinking it all over I want the guarantee fulfilled."

And in the letter of April 4th:

"I expect you to fulfill that guarantee and cannot see why I should wait until you make inquiries as to the value of the property."

On the 20th of April the attorneys for the plaintiff wrote to the defendant, insisting upon a prompt adjustment of the matter. In response to this letter the defendant on the 25th of April wrote to the plaintiff, saying:

"I will keep my agreement made with you. I hardly think it necessary to employ an attorney. I haven't the cash on hand at present but think I will be able to arrange it this fall. Will you send me a copy of the agreement, hope this will be satisfactory to you."

The defendant not only does not repudiate his liability, or claim that the plaintiff has deferred his demand too long, but distinctly recognizes the binding force of the agreement. The defendant, in his testimony, did not claim that he told the plaintiff he was not liable on this agreement; and he did not deny that after the expiration of three years the plaintiff repeatedly conferred with him in regard to selling the lots, and as to the prospect of finding a purchaser.

In view of all of this testimony, supported and elucidated by the correspondence mentioned, we think it was for the jury to determine, in the first place, whether the plaintiff, during the three years stipulated in the agreement, exercised reasonable diligence and made proper efforts to sell these lots. In the second place, it was for the jury to find whether the defendant, under all the circumstances, acquiesced in the delay which was made, appreciating that his liability in compliance with the agreement was subsisting during all of this time. If so, the jury might say the plaintiff commenced his action seasonably.

Soon after the purchase of the land, the plaintiff, by some arrangement, the nature of which is not clearly disclosed by the record, transferred some interest in this land, or the profits which might accrue therefrom, to his brother, Edward Maier. The latter paid to the plaintiff one-half of the cash payment, and one-half of the bond and mortgage and of the taxes falling due from time to time. If this arangement was equivalent to a sale of one-half of the premises, then the plaintiff, to the extent of the money received, must give credit upon the agreement sued upon. If the plaintiff had sold to his brother the entire parcel of land, receiving the full purchase price paid by him, but retaining title in himself because of an agreement that he was to share

in any profits which might accrue from a sale of the land, I take it, the arrangement would relieve the defendant from his liability on the agreement. That contract was designed to indemnify the plaintiff against any loss on his investment, by insuring its repayment or reimbursement, including the taxes and incidental expenses provided for in the agreement. If he received the full return of his investment, with interest and taxes, by virtue of another agreement, so that he has lost nothing, then the defendant should not be called upon to pay. If he has received in part the purchase price, a ratable reduction should be made of his claim against the defendant. The maximum limit of the latter's liability is the loss sustained by the venture of the plaintiff. If the plaintiff has been in part reimbursed by a sale, or by a contract tantamount to a sale, in that it lessened his loss, he should be content if the defendant is held bound to him for the balance of his investment.

The defendant offered in evidence certain letters of said Edward Maier to him, and which are referred to in the letters of the plaintiff to the defendant, and they were excluded by the court. Later the defendant sought to show that he offered to Edward Maier to take the land back "if they were not satisfied" with it; "that he had an offer of $14 per foot." This was also excluded. Without going into the evidence in detail, we think Edward Maier is sufficiently connected with this land transaction to render the evidence offered competent. The two brothers were to some extent, at least, interested in the speculation, and were together endeavoring to sell the lots, and together were writing and conferring with the defendant in regard to them. The act of one was the act of the other, and was so recognized by the plaintiff. The defendant's exceptions should be sustained, and the motion for a new trial granted, with costs to the defendant to abide the event.

Defendant's exceptions sustained, and motion for new trial granted, with costs to the defendant to abide the event.

WILLIAMS and HISCOCK, JJ., concur.

McLENNAN, P. J. (concurring). I concur in the result reached in this case, that the defendant's exceptions should be sustained and a new trial granted, but I dissent from the views of the majority of the court as expressed in the prevailing opinion, viz., that it is for the jury to determine whether or not the plaintiff made his election to resell, and tendered a reconveyance of the premises in question to the defendant, within a reasonable time, and in other respects complied with the terms of the agreement upon which he seeks to recover. It seems to me that, upon the facts disclosed by the record in this case, it should be held, as matter of law, that the plaintiff is not entitled to recover, and that the defendant's motion for a nonsuit should have been granted.

The facts, so far as material, are not in dispute. On the 10th day of January, 1893, the defendant sold and by quitclaim deed conveyed to the plaintiff a parcel of land, being 60 feet front on Goethe street, in the city of Buffalo, N. Y., for the consideration of $720, or $12 per front foot. Two hundred and twenty dollars of the purchase price was paid down, and the payment of the remaining $500 was secured by a bond and mortgage upon the premises, due in three years, and bearing even

date with said deed, duly executed by the plaintiff, and delivered to the defendant. At the same time, and as part of the consideration of the purchase, the defendant executed and delivered to the plaintiff the following instrument:

"Buffalo, N. Y., Jan'y 10th, 1893.

"Guarantee to Chas. W. Maier.

"I hereby agree, if at the end of three (3) years you can't sell at an advance to cover six (6) per cent. interest on investment I will take the land back and refund the money; also pay you six (6) per cent. interest and all other expenses connected with transfers, recording, etc.

"Joseph H. Rebstock,
"Per S. J. Rebstock, Atty."

Immediately upon the execution of said deed and guaranty, and their delivery to the plaintiff, he entered into possession of the premises.

The evidence clearly indicates that the plaintiff purchased the property solely for the purpose of speculation. He had never seen it at the time, nor until more than a year afterward. He and the defendant had been intimate friends for a long period, and the plaintiff relied solely upon the representations made by the defendant as to the value of the property, present and prospective. The plaintiff evidently thought he had a good thing if he continued to hold the property, for he really made no attempt to sell it for nearly a month after the expiration of three years from the time when he purchased the same. The plaintiff testified:

"Usually—always, I might say—I saw the defendant, and talked with him about the prospects of selling the property. He told me he would put a sign on, with the words 'For Sale,' and his own name and address, and, if any possible purchaser came, he would try to sell the same."

This is all the plaintiff did by way of attempting to sell the property until after the expiration of the three years. He did not authorize the defendant to sell it. No selling price was fixed. At the most, the defendant was only empowered to let the public know the premises were for sale. His only relation to the property was that of a friend of the plaintiff, endeavoring to find a purchaser at a price which would be approved by him; and during those three years the plaintiff never suggested or intimated to the defendant that he (the plaintiff) might elect to reconvey the property, or that he was not entirely satisfied with his purchase as a speculative investment. On and after January 10, 1896, "the end of three years" from the date of the conveyance, and upon the expiration of the option period mentioned in the contract, what did the plaintiff do to indicate that he would require the defendant to repurchase the property? Absolutely nothing. On the contrary, he continued to exercise all acts of ownership over the property, the same as before; and a month later, without consultation with the defendant, so far as appears, placed the property in the hands of Chadeayne & Colter, real estate agents of Buffalo, for sale, and fixed the price at $18 to $20 per front foot, which, if sold at that price, would have netted him a profit of several hundred dollars. In that regard the plaintiff testified:

"I held that property and gave it to Chadeayne & Colter for sale in February, 1896. I fixed a price of eighteen or twenty dollars per front foot. That was the selling price which I fixed on it at the start, and I kept that price right

along. There was sixty feet. Chadeayne & Colter had it about a year and a half. After a while, I put it down to eighteen dollars a foot, and asked if they could get an offer."

Thus it appears that, a month after the expiration of the option period, the plaintiff, without having demanded that the defendant repurchase the property, and without having offered to reconvey the same, continued for a year and a half to offer it for sale at a price greatly in excess of what it cost him, and, so far as appears, never offered it for sale at a price which would only equal such cost. Indeed for five years after the expiration of the option period the plaintiff was actively engaged in endeavoring to sell the property at such a price as would yield him a large profit upon his investment. ·It is true, however, that during that time he received no offer for the property in excess of $4 per front foot, which was much less than its cost. During all this time the plaintiff frequently consulted with the defendant as to the actual and prospective value of the property, as to what could probably be realized from it, and as to what assistance the defendant could render in the way of securing an advantageous sale of the same; but throughout such consultations, conversations, or negotiations, continuing over a period of five years, there cannot be found a single word in the evidence to indicate that the plaintiff ever intimated or suggested to the defendant that he (the plaintiff) was dissatisfied with his purchase or investment, or that he elected or would elect to require the defendant to repurchase the property under his agreement of guaranty. It therefore appears without contradiction that for a period of more than eight years after the purchase of the premises, and for more than five years after the expiration of the option period, the plaintiff never elected to sell, offered to reconvey, or tendered to the defendant a deed of the premises,·or in any manner intimated or suggested that he elected or would elect so to do, or that he would seek to hold the defendant liable upon his guaranty. On the 7th day of February, 1901, five years and nearly a month after "the end of three years," the plaintiff for the first time demanded of the defendant, by letter dated that day, that he repurchase the property, and refund to him the purchase price, costs, and expenses, and interest upon the whole at the rate of 6 per cent. per annum. He evidently had then become satisfied that speculation in Buffalo real estate would not yield the great profits anticipated, and concluded, as stated in a letter written to the defendant on the 20th day of February, 1901:

"I want to close the thing up now, and get out of Buffalo real estate. The six per cent. investment under your guaranty is profit enough for me, and I want to settle the thing up."

In answer to the plaintiff's demand, the defendant stated in a letter dated April 25, 1901,

"Will say that I will keep my agreement with you. I hardly think it necessary to employ an attorney. I have not the cash on hand at present, but think I will be able to arrange it this fall."

If the defendant was not liable to the plaintiff upon the guaranty prior to the writing of such letter, it cannot be contended that he thereby became liable. The defendant finally refused to comply with the

demand of the plaintiff that he repurchase the property, and this action was commenced.

This appeal only involves the construction and meaning of the guaranty agreement. No question of estoppel is involved. If the plaintiff had said to the defendant, immediately prior to or at the expiration of the option period, "I am about to, or intend to, elect to resell the property to you, and to hold you liable upon your agreement," and the defendant had said something or done some act which had led the plaintiff to refrain from taking such election at the time, or if the option period had been extended by agreement between the parties, then another question would be presented; but there is no suggestion of that kind in the evidence. As we have seen, the plaintiff never even intimated, either by word or act, that he contemplated electing to require the defendant to repurchase the property, or that he regarded the defendant liable upon his guaranty, until the 7th day of February, 1901. In fact, his course of conduct in respect to the property during the entire period of five years was inconsistent with such an election on his part. During that entire time he was endeavoring to sell the property at a large profit, and not for a sum simply equal to his original investment; such profit, if realized, being for his exclusive benefit. The guaranty agreement is plain and unambiguous. It is nothing more than an agreement on the part of the defendant to repurchase the property of the plaintiff, at a specified price, "at the end of three years," if the plaintiff shall elect to sell at that time. The plaintiff did not make such election "at the end of three years," or until more than five years thereafter; and his failure so to do, so far as appears by the evidence, was in no manner influenced by any word or act of the defendant. It would seem, therefore, that, upon any reasonable construction of the contract, it should be held, as matter of law, that the plaintiff is not entitled to recover.

It is said in the prevailing opinion:

"In view of all the testimony, supported and elucidated by the correspondence mentioned, we think it was for the jury to determine, in the first place, whether the plaintiff, during the first three years stipulated in the agreement, exercised reasonable diligence and made proper efforts to sell these lots. In the second place, it was for the jury to find whether the defendant, under all the circumstances, acquiesced in the delay which was made, appreciating that his liability in compliance with the agreement was subsisting during all of this time. If so, the jury might say the plaintiff commenced his action seasonably."

As to the first proposition, while we do not think the question material in this case, it may be said there is not a particle of evidence to indicate that the plaintiff really attempted to sell the property during the three years after he purchased the same. He never fixed a price for which he would sell it. As we have seen, the most he did was to ask the defendant to make it known that the property was for sale, and to place a sign thereon indicating that fact. As to the second proposition, we think it entirely immaterial whether or not the defendant acquiesced in the delay in the sale of the property. He could do nothing else but acquiesce. The defendant could not sell the property. The plaintiff could keep it or sell it, as he saw fit. He alone had the right of election. The plaintiff was the actor. The defendant had no

act to perform until the plaintiff made demand for the purchase price and tendered a conveyance of the property, and, unless such demand and tender were made, the defendant could not be called upon to act. What should the defendant have done in this case? Was he required to go to the plaintiff and offer to buy back the property—inquire whether the plaintiff was dissatisfied with his purchase, and would be likely to demand the repayment of the purchase price? No such duty was imposed upon the defendant in the premises. He had no right of election. Such right belonged exclusively to the plaintiff, and, unless exercised in accordance with the terms of the contract, was lost forever.

We think the authorities fully sustain the defendant's contention. Lester v. Jewett, 11 N. Y. 453, was an action brought to enforce the following agreement:

"For value received, I agree at the expiration of one year from this date, to purchase thirty shares of the capital stock of the Southern Life Insurance and Trust Company, of Ralph Lester of the city of Rochester, for the sum of three thousand dollars.
"Dated September 6th, 1839.
     "[Signed]                                   Simeon B. Jewett."

It was held:

"To entitle the vendor. to recover upon the agreement, he must aver. and prove a tender or offer to sell and transfer the stock to the party contracting to purchase, at the expiration of the year."

It was also said in that case (page 454) per Edwards, J.:

"If the instrument upon which this suit is brought be construed according to the plain rules of common sense, without regard to legal subtleties and refinements, it seems to me that there can be but little difficulty in coming to a conclusion as to its true meaning and effect. The defendant agrees to purchase thirty shares of stock on a particular day at a fixed price. No credit whatever is given. Now, what is he bound to do in order to make such a purchase? He certainly is not bound to pay the price agreed upon without receiving anything in return. A cash purchase can only be made by a payment of the purchase money on the one side, and a delivery of the thing purchased on the other. These are, and must necessarily be, concurrent acts. The purchaser is not bound to pay the purchase money unless he receives the thing purchased; and how can it be said that he has refused to receive the thing purchased, and to pay the money for it, when he has never had the opportunity of receiving it? I cannot perceive how a person can be said to be in default for not doing a thing, when the party who alleges his default, and who alone could put it in his power to do the thing, has neglected to do so."

In the case at bar, for a period of five years after the expiration of the option period, it may be asked when—what year, month, or day—did the defendant have a right to repurchase the premises in question? No tender of reconveyance had been made to him. No intimation on the part of the plaintiff had been given that such tender was to be made. The defendant was therefore without power to act. It was not for him to interfere with the laudable and legal purpose of the plaintiff to realize a substantial profit upon the investment which he had made. At the expiration of the option period the plaintiff was engaged, as he had been before, in trafficking with the property for his own benefit, and without having demanded of the defendant that he repurchase the same.

Taylor Blair, 59 Hun, 347, 13 N. Y. Supp. 154, was an action upon a contract almost identical with the one at bar. On April 4, 1873, one

Meyer purchased 500 shares of stock, and the defendants agreed "that if, at the end of one year from this date, the said Meyer shall desire to sell the said shares at the price paid for the same by him, we will purchase the same and pay to him the amount paid by him on the same with interest." It was held that it was incumbent upon Meyer, in order to sustain an action brought to recover the amount paid for such stock, with interest, to prove that on the 4th day of April, 1874, he offered or tendered a transfer of such shares to the parties agreeing to purchase the same. The court said: "That was a condition precedent, according to the terms of the agreement upon which the right to recover this money depended." In the opinion of the late Judge Daniels, which was concurred in by Van Brunt, P. J., and Brady, J., many authorities are cited in support of the proposition.

In Page v. Shainwald, 169 N. Y. 246, 62 N. E. 356, 57 L. R. A. 173, the effect of a similar contract was considered, the agreement on the part of the defendant in that case being:

"I hereby agree, if requested so to do by you on the first day of January, 1897, within ten days thereafter to pay to you the amount paid by you upon said subscription," etc.

It was held that, as the plaintiff failed to tender his stock and make the request on the day named, he could not recover, although he did so three days after, and notwithstanding the day named in the contract was a legal holiday. To the same effect is Hakes v. Peck, *40 N. Y. 505; McNutt v. Clark, 7 Johns. 465.

This is a case where an obligor agrees to do something "at the end of" a certain time, in case the obligee so elects. It is not for a jury to say that such election may be made at a different time than that specified in the contract, or at any time within five years thereafter.

We think the cases referred to in the prevailing opinion have no bearing upon the question in controversy.

Pierson et al. v. Crooks et. al., 115 N. Y. 539, 22 N. E. 349, 12 Am. St. Rep. 831, was an action to recover under an executory contract for the sale and delivery of goods of a specified quality, and it was simply held that the purchaser had a reasonable time in which to determine whether or not the goods were of such quality. In that case the court said:

"It stands upon the most obvious justice and equity that the seller should be apprised promptly if there is any objection, and the vendee intends to reject the goods, so that he may retake possession or resell the goods, and save himself, as far as practicable, from loss; but the vendee has a reasonable time for examination and to give notice, and what is a reasonable time is usually a question of fact, and not of law, to be determined by the jury upon all the circumstances, including as well the situation and liability of injury to the vendor from delay, as the convenience and necessities of the vendee."

The case of Grabfelder v. Vosburgh (decided at the last term of this court) 85 N. Y. Supp. 633, also referred to in the prevailing opinion, we think, has no application to the question involved in this case. There the plaintiff sold a new brand of whisky to the defendant upon the express condition that, if the defendant could not sell it—no time being fixed—he would not be required to pay for it, and that the plaintiff would take it back; and it was simply held that it was for the jury

to say, under all the circumstances, whether the defendant kept the goods for such length of time as to be deemed to have ratified the sale, or whether he offered to return the same within a reasonable time. All cases of that class are decided upon the theory that there was an implied contract that the vendee should have a reasonable time for inspection.   If the contract of sale, however, provides that the inspection shall be made on or before a certain day, and the goods returned to the vendor if found unsatisfactory, it would not be claimed that a jury might be permitted to say that it was only reasonable that the vendee should have a longer time in which to make such inspection, and thus be relieved from paying for the goods.

We think it should be held that the facts disclosed by the evidence in the case at bar failed to establish a cause of action in plaintiff's favor, as against the defendant, and that the motion for a nonsuit should have been granted.

STOVER, J., concurs.