Guy Gilbert Ribaudo, J.
On November 26, 1956 defendant buyer placed an order with plaintiff seller for 5,594% yards of first quality 41/42-inch poplin, assorted named colors, zeland finish, combed and carded at 40(i per yard. This order was in writing and signed by plaintiff. Against a total price of $2,237.70, defendant paid $400 on account early in February, 1957. Plaintiff sues to recover the balance of $1,837.70.
Defendant buyer defends by asserting breaches of warranty in that the goods as delivered by plaintiff seller did not conform with the specifications of the written order. Buyer claims damages of $2,588.11 in extinction of the balance sued for by plaintiff, and seeks entry of judgment against plaintiff for the difference of $750.41.
Defendant also interposes two separate counterclaims for damages by reason of breaches of warranty arising out of two prior written orders, June 6, 1956, and June 28, 1956, respectively. As to the order of June 6, 1956, defendant claims damages of $2,639.71; and as to the order of June 28, 1956, damages of $2,231.53. He seeks affirmative judgments against plaintiff for these damages.
A common pattern of facts was established as to all three orders. Plaintiff is a jobber of textiles and maintains a store and warehouse for this business. Defendant buyer is an exporter of textiles to his customers in Teheran, Iran.
The seller testified that he met the defendant some three weeks before June 5, 1956, at which time the defendant told him that *33 the defendant was “buying goods for Teheran that the plaintiff on that occasion gave to the defendant clippings and samples of the merchandise which the plaintiff was selling ; that depending on the answer of defendant’s Iranian customers, defendant would place orders with plaintiff; that thereafter and on June 5, 1956, the defendant came in and placed his first order for merchaindise. This order, written out in the hand of the plaintiff and signed by him carried his handwritten legend that he, the plaintiff, was to pack the goods in 300-pound bales and truck the merchandise to the pier.
In like manner, the orders of June 28, 1956, and of November 26, 1956 required the plaintiff to export pack and truck the bales to the pier. As each order was received by defendant from his Teheran customer, defendant placed an order with plaintiff for exactly the same goods and furnished plaintiff with shipping marks and numbers to be stenciled on the bales — the markings on each order included the legend ‘ ‘ Teheran, Iran via Khoramshahr ”. Plaintiff was thoroughly experienced in shipping and packing goods for export and had packed “three-four million dollars ” of goods in the “past 3, 4, 5 years ”. Plaintiff export packed, delivered the bales of each order to the steamship company at the piers in New York.
Plaintiff testified that he knew the ocean voyage to Iran would take from 60 to 90 days, and that transshipment from the port of Khoramshahr and clearance through customs takes another 30 days.
This is the factual background in which these purchases must be viewed.
Plaintiff testified that defendant buyer inspected the goods of each order as they were packed in bales, that the cartons were closed and sealed in buyer’s presence, and that buyer at that time saw that the goods were in accordance with the orders. The defendant testified directly to the contrary and was equally emphatic that he was not present when the goods were packed, that he gave a specific order in writing and expected that order to be filled as called for and was never asked to inspect the goods. Plaintiff went on to testify that his version could be supported by two witnesses. One, plaintiff’s brother, when called to the stand had no knowledge whatsoever as to this; the other, a former employee, on cross-examination testified, in contradiction to plaintiff, that there were occasions when he packed the goods with the plaintiff when the defendant buyer was not present. At best he had very vague recollections about the entire situation.
*34 Upon the preponderance of the credible evidence, including plaintiff’s own testimony upon his examination before trial, which gives different versions as to whether the defendant was present upon selection and packing of the goods, the court finds that the goods were not inspected by the defendant as they were being selected and packed, nor was the defendant requested to inspect them and refused so to do.
If defendant buyer were present throughout the process of selection and export packing and if this were the practice of the parties with respect to orders placed by defendant, it would have been rather simple for plaintiff seller to obtain from defendant some form of binding record to such effect; particularly, since plaintiff knew when he took the orders that after he trucked the bales to the piers many long months would pass before the goods were seen and before any variance ■with the order could be determined.
The terms of each order were specific and in writing. Defendant buyer had every right to the goods he bought. The buyer does not have (in the absence of an agreement or understanding to the contrary) the burden of examining goods before they are packed and shipped by the seller to preserve buyer’s right to make claim for deviations from the contract thereafter discovered.
Each of the orders prepared by seller on his order form had printed on their face “All G-oods Sold F.O.B. Shipping Point”, and under the legend “Term of Sale” — “These goods are sold at point of shipment ’ * * * ” (so italicized on plaintiff’s form). Defendant buyer was not thereby debarred from inspection.
‘ ‘ The statement in an English ease seems sound, that ‘ There is no general rule that a buyer of goods f.o.b. loses his right to reject them for non-compliance with the contract if he does not inspect them before they are put on board ship. ’ As has been seen, the fact that the property passes when goods are delivered to the carrier does not preclude a right of inspection at destination, and there seems no reason why an express statement that the contract is for goods f.o.b. the point of shipment should make a difference.” (3 Williston, Sales [rev. ed.], § 479b.) All the surrounding circumstances clearly establish that though the seller may have made an appropriation of the bales to defendant’s order when he completed trucking them to the piers, and title may have passed at that time, he knew that opportunity for inspection could not thereafter be *35 had until the goods arrived at defendant’s customers in Teheran, Iran. Where the seller is to ship the goods, the place of inspection, in the absence of a contrary agreement, is their destination. (Andersen Trading Co. v. Brody, 193 App. Div. 681, 685; 3 Williston, Sales [rev. ed.], § 480.)
The mere passage of time before inspection does not debar a claim (e.g., Sorenson v. Keesey Hosiery Co., 244 N. Y. 73, where seller also export packed goods purchased by buyer relying upon samples shown by seller where almost a year elapsed before inspection by the South American subvendee). The time allowed for inspection is such time as is reasonable, “ having regard to * * * all the circumstances of the case ” (3 Williston, Sales [rev. ed.], § 476). The determination of what is reasonable is a question of fact. (Schnitzer v. Lang, 239 N. Y. 1, 4; Glass S Co. v. Misroch, 239 N. Y. 475, 483.) “ True, dissent must be announced within a reasonable time (Personal Property Law, § 128, subd. 1; § 129), but a reasonable time is without determinate limits and varies with the facts.” (Cardozo, J., in Glass & Co. v. Misroch, supra, pp. 483-484.)
Thus, the time lapse between the bales leaving New York and their ultimate arrival at their destination in Teheran, Iran, cannot debar defendant from asserting breaches of warranty for deviations from orders.
Plaintiff urges that the printed legend on his order form “ All claims to be made in five days ’ ’ obligated the defendant to make inspection and make claims within five days after delivery. This legend at best is ambiguous as to when the five-day period started. If it be construed as meaning (as plaintiff asserts) five days after delivery, delivery in this case was made by plaintiff to the steamship. Manifestly, an inspection under these circumstances could not be made.
Upon all the facts, the court finds that neither party intended nor expected that the buyer was obliged to make claims within five days after the seller delivered the sealed bales to the steamer. While it may be that parties may contract to fix a short time within which to present claims “ the effectiveness of such limitation should be determined in accordance with rules of reasonability.” (Jessel v. Lockwood Textile Corp., 276 App. Div. 378, 379.)
Admittedly, on its face, ambiguity attaches to the printed legend. To interpret his form, as plaintiff contends, would for all purposes deny to the defendant buyer all redress without *36 opportunity to ascertain whether the plaintiff has fulfilled his obligations. A buyer must have a reasonable opportunity to receive and examine his goods. (Gutkind v. Lueders d Co., 267 N. Y. 320, 331.) Redress is not to be denied to the defendant here because of this ambiguous legend upon plaintiff’s printed form, particularly since plaintiff must have known that inspection could not be made until the goods arrived in Teheran. (See Gutkind v. Lueders & Co., supra, p. 332; Andersen Trading Co. v. Brody, 193 App. Div. 681, 685, supra.)
On February 15, 1957, the defendant received a letter from Teheran advising him of breaches of warranty as to the June 6 order, and on the same day he went to the plaintiff and notified him of the receipt of that letter. On February 18, 1957, defendant received a complaint letter from the Iranian vendee of the June 28, 1956 order, setting out alleged deviations from the order. He again went to plaintiff’s place of business on the same day and advised the plaintiff orally thereof. On February 20, 1957, by certified mail the defendant sent a letter to plaintiff setting forth in detail the claimed deviations from the orders. Plaintiff conceded that he refused to accept the delivery of this letter and the same was returned to the defendant.
On May 31, 1957, the defendant received notice of breaches of warranty from his Iranian customer, of the November 26, 1956, order. On the same day defendant, by certified mail, gave notice to plaintiff in detail of the claimed breaches of warranty. Plaintiff also refused to accept certified mail delivery of this letter.
The seller now urges that the foregoing constituted belated notice after acceptance of the goods (Personal Property Law, § 130),. and that defendant is debarred from any recovery as a matter of law.
Initially, the court must determine whether there was an acceptance as defined in section 129 of the Personal Property Law. The statute sets out the conduct necessary to establish acceptance. Payment of the price, passage of title, delivery by the seller, are by no means conclusive. Acceptance is not to be confused with them. (3 Williston, Sales [rev. ed.], § 481 et seq.) As delivery may precede acceptance (American Aniline Prods. v. Nagase & Co., 187 App. Div. 555) defendant did not accept the goods merely because seller delivered them to the piers. Prior to giving notice of the breaches, the defendant and his Iranian customers did none of the things constituting acceptance as defined in section 129 of the Personal Property Law. Acceptance after giving notice results only in the buyer fore *37 going the right to return the goods, and thereby being limited to damages. Proof here does not show belated notice after acceptance. But, even if there were acceptance, “ The eases are many in which goods are shipped by carriers who receive them for the buyers. An order for such shipment is an assent that the goods be appropriated by the seller, and title passes when they are delivered to the carrier ‘ in a deliverable state ’ (Standard Casing Co., Inc., v. California Casing Co., Inc., 233 N. Y. 413; Rosenberg Bros. & Co. v. Buffum Co., Inc., 234 N. Y. 338, 343; Kinney v. Horwitz, 93 Conn. 211, 219; Levy v. Radkay, 233 Mass. 29). This does not mean that a buyer is helpless if the goods when they reach their destination are found to be defective. His assent to the appropriation of goods in a deliverable state is not assent to the appropriation of any goods, though of a hind or a quality at variance with the contract. ’ ’ ( Cabdozo, J., in Glass S Co. v. Misroch, 239 N. Y. 475, 480-481, supra; 3 Williston, Sales [rev. ed.], § 483.)
The reasonableness of the time of giving notice under section 130 is a question of fact. (3 Williston, Sales [rev. ed.], § 484a). Reasonable time with respect to goods destined for distant lands and foreign customers, with all the attending contingencies of ocean voyage, overland haulage, and customs clearance, is not fixed by standards applying to a domestic or local shipment (e.g., Sorenson v. Keesey Hosiery Co., 244 N. Y. 73, supra; Glass & Co. v. Misroch, supra). The plaintiff knew not only the destination of the goods, but also that the probable time between departure from the New York piers and receipt by the Teheran vendees was three to four months according to his own estimate. Upon making these sales plaintiff must have realized that by their very nature and by his obligation to pack and ship to the piers, many months must pass before the goods could be inspected at their destination. He must have known and realized that communications between defendant and defendant’s customers were influenced by the great distance between New York and Teheran, Iran, and by the hazards incident to mail coming from the Middle East.
As for the defendant, he acted immediately upon receipt of information from his customers.
To hold, as a matter of law, that notice was not given within a reasonable time would be tantamount to ignoring the facts within the manifest contemplation and knowledge of the seller. Conversely, plaintiff’s full awareness of the time elements necessarily involved in these shipments, established that he could not have reasonably expected to be given notice except *38 after many months had elapsed. Considering all the circumstances, the court finds that the notice which defendant gave immediately upon receipt thereof by him, was timely under section 130.
Upon all the proof, including the testimony of the respective parties and the testimony of the witnesses in response to the written interrogatories, the court finds that the plaintiff failed to fill the orders as he was required to do. Plaintiff’s reference to inspection of the November shipment by the United States Department of Agriculture is conclusively met by the stipulation of both counsel that only one carton of six was looked at and that such inspection was but a ‘ spot check ’ ’.
It is now essential to determine the extent to which the defendant is entitled to recover damages. Since Passinger v. Thorburn (34 N. Y. 634) the recovery of damages in cases where the seller knows that a buyer is reselling the goods to his vendee with a like warranty as given the buyer by the seller, is grounded upon the buyer’s liability to his subvendees. “ And even though the original buyer has not yet been held liable to the sub-vendee, the amount of his probable liability may be recovered from the original seller,” (3 Williston, Sales [rev, ed.], § 614a; see, also, Liberty Mut. Ins. Co. v. Sheila-Lynn, Inc., 185 Misc. 689, 693.) Particularly here, where the plaintiff gave to the defendant buyer samples which plaintiff knew the defendant was sending to his customers in Teheran for the very purpose of obtaining orders for goods, as well as the contract obligation of plaintiff to ship directly to defendant’s vendees, the court finds it was within the contemplation of the parties at the time they made their contract that damages sustained by subvendees would naturally flow from plaintiff’s breaches of warranties. (Personal Property Law, § 150, subd. 6; Buckbee v. Hohenadel, 224 F. 14 [C. C. A. 7th]; Boyce v. Fowler, 87 F. Supp. 796, 799; Lissberger v. Kellogg, 78 N. J. L. 85.) These special circumstances within the knowledge of the contracting parties fix the rule of damages to be applied,
Defendant went to Iran in the summer of 1957; he saw his customers, examined the goods, found the breaches complained of, and worked out settlements with them. Provided such settlements are “ foreseeable, reasonable and subject to calculation ” (Boyce v. Fowler, supra, p. 799) he is entitled to recover the amounts so established. (Royal Paper Box Co. v. Munro & Church Co., 284 Mass. 446, 453.)
As to each order, there was included proof of the loss of profits by each -of defendant’s customers. Thus, defendant’s *39 customer of the June 6 order testified as to the total cost of the goods, including freight, customs, etc., and then testified his profit on cost would have been 20% thereof or $809.65. On the June 28 order, there was like testimony by defendant’s customer of that order, and here the profits were 25% of cost or $662.91. On the November 26, 1956 order, the loss of profits was testified to by that customer as being 25% of the cost or $875.91. Can loss of profits be proper items of damages under these circumstances 1 Only in the plainest case is recovery permitted for expected profit. (Moran v. Standard Oil Co 211 N. Y. 187, 195; 3 Williston, Sales [rev. ed.], § 614b.) Although by reason of the foreign exports here involved with all their attending difficulties, loss of profits may well have been within the contemplation of the parties, nevertheless, the proof as to the expected profits was not sufficient to establish the amounts claimed. The mere statement that profits will equal a percentage of the cost of the goods does not suffice to allow recovery. Hence, as to each order, the court disallows any recovery for loss of profits.
The proof (set out in footnotes) did show, however, the following as to each order:
Order of June 6,1956 J Total cost as outlined below.................. $4,048.25 Market value of goods as received............ 2,218.19 Actual loss without expected profits........... $1,830.06 (1) June 6 Order — ‘ Purchase Price to Defendant................ $2,070.00 Cost of goods FAS NY to Teheran Vendee........... $2,363.48 Brokerage ....................................... 58.82 Handling charges................................. 15.68 Forwarding charges, etc.......................... 52.68 Freight inland ...................... 62.38 Custom duty ..................................... 1,431.69' Custom clearance charges.......................... 63.52 Total cost ....................................... $4,048.25 Expected profits @ 20%........................... 809.65 Total ........................................... $4,857.90 Market value of goods as received.................. 2,218.19 Total damages claimed............................. $2,639.71 Disallowed per decision — Loss of Profits............ 809.65 Damages allowed ...........................$1,830.06
*40 Order of June 28,1956 ? Total cost as outlined below.................. $2,651.65 Market value of goods as received............ 1,083.03 Actual loss without expected profits........... $1,568.62 Order of November 26,1956 Total cost as outlined below.................. $3,503.16 Market value of goods as received............ 1,790.84 Actual loss without expected profits........... $1,712.32
(2) June 28 Order — Purchase Price to Defendant.............. $1,408.98 Cost of goods PAS NY to Teheran Vendee.......... $1,558.88 Brokerage ....................................... 35.29 Handling charges ................................. 31.37 Custom duty ..................................... 993.42 Custom clearance charges.......................... 32.69 Total cost ....................................... $2,651.65 Expected profits @ 25%........................... 662.91 Total ........................................... $3,314.56 Market value of goods as received................... 1,083.03 Total damages claimed............................. $2,231.53 Disallowed per decision — Loss of Profits............ 662.91 Damages allowed ................................. $1,568.62
(3) November 26 Order — Purchase Price to Defendant.......... $2,237.70 Cost of goods PAS NY to Teheran Vendee........... $2,500.47 Brokerage ....................................... 19.49 Handling charges ................................ 6.53 Freight inland ................................... 32.69 Custom duty ..................................... 904.88 Custom clearance charges.......................... 39.10 Total cost ....................................... $3,503.16 Expected profits @ 25%........................... 875.79 Total ........................................... $4,378.95 Market value of goods as received................... 1,790.84 Total damages claimed............................. $2,588.11 Disallowed per decision — Loss of Profits............ 875.79 Damages allowed ................................. $1,712.32
Accordingly, judgment shall be entered as follows:
On the complaint, defendant is entitled to offset against $1,837.70 (the unpaid balance of the price) damages of $1,712.32 *41 with interest from November 30, 1956 (the date of delivery by plaintiff to the piers), having affirmative judgment for the difference. The complaint, therefore, is dismissed and defendant shall have judgment in the amount so established.
On the counterclaim arising out of the June 6, 1956 order, defendant shall have judgment for $1,830.06 with interest from June 19, 1956.
On the counterclaim arising out of the June 28, 1956 order, defendant shall have judgment for $1,568.62 with interest from July 6, 1956.