**SHERKATE SAHAMI KHASS RAPOL (RAPOL CONSTRUCTION CO.), Plaintiff-Appellant,**

v.

**HENRY R. JAHN & SON, INC., Defendant-Appellee.**

**HENRY R. JAHN & SON, INC., Defendant and Third-Party Plaintiff-Appellee,**

v.

**LUFKIN INDUSTRIES, INC., Third-Party Defendant-Appellee.**

**Cal. No. 57, Docket 82–7200.**

United States Court of Appeals, Second Circuit.

Argued Sept. 15, 1982.
Decided Feb. 27, 1983.

**1050**

Caspar F. Ewig, New York City (Hill, Rivkins, Carey, Loesberg, O'Brien & Mulroy, New York City, on the brief), for plaintiff-appellant.

Frederick H. Block, New York City, for defendant and third-party plaintiff-appellee.

Frank H. Gordon, James N. Blair and Ted G. Semaya, New York City (Rogers, Hoge & Hills, New York City, on the brief), for third-party defendant-appellee.

Before MANSFIELD, VAN GRAAFEILAND and NEWMAN, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

Sherkate Sahami Khass Rapol (hereinafter referred to as "Rapol") appeals from an order of the United States District Court for the Southern District of New York, Cooper, J., dismissing Rapol's complaint at the close of its case. 531 F.Supp. 1048. Rapol brought this action against Henry R. Jahn & Son, Inc. (hereinafter "Jahn") for breach of a contract in which Jahn agreed to supply Rapol with six Lufkin Model TD–27 truck-trailer underbody frames. Jahn denied liability and impleaded the manufacturer, Lufkin Industries, Inc. (hereinafter "Lufkin") as a third-party defendant.

Because the trial court directed a verdict against Rapol, the evidence which Rapol presented must be viewed in the light most favorable to Rapol, and Rapol must be given the benefit of all reasonable inferences which may be drawn in its favor from that evidence. *Havanich v. Safeco Ins. Co.*, 557 F.2d 948, 950 n. 2 (2d Cir.1977). Jahn's motion should not have been granted unless there was a complete absence of probative evidence to support a verdict in favor of Rapol, or the evidence was so overwhelmingly in favor of Jahn that reasonable and fair minded men, in the exercise of impartial judgment, could not have rendered a verdict against Jahn. *Armstrong v. Commerce Tankers Corp.*, 423 F.2d 957, 959 (2d Cir.), *cert. denied,* 400 U.S. 833, 91 S.Ct. 67, 27 L.Ed.2d 65 (1970). Our view of Rapol's proof satisfies us that Jahn's motion should have been denied. Accordingly, we reverse.

Because Judge Cooper's opinion, 531 F.Supp. 1048, contains an extensive statement of the facts, a brief summary will suffice for our purposes. In 1974, Rapol was awarded contracts in connection with a large construction project in Iran. Iraj Safapour, an officer of the company, decided that Rapol needed more dump truck trailers in order to carry out its contractual obligations. He secured some brochures from an equipment broker, and among them was one which described the Lufkin Model TD–27 dump trailer.

Unlike the trailers already in the Rapol fleet, the chassis and box of the TD–27 constituted one unit. When a load was dumped, the chassis and box rose together. On the trailers already owned by Rapol, the chassis and the box were separate units. When a load was dumped, the chassis remained stationary, and the box alone tilted upwards. Safapour decided that, because the TD–27 trailer was more durable and stable than the two-unit type, it would suit Rapol's needs best.

In 1975, Safapour visited the United States and met with a Jahn representative to discuss the possible purchase of some TD–27 trailers. Because Safapour felt that the price quoted by Jahn for the complete units was too high, the discussion turned to the possibility of Rapol's purchasing only the underbody frames, thereby reducing substantially the cost of shipment to Iran. Shortly after Safapour returned to Iran, he

received a quote from Jahn for six Lufkin Model TD–27 underbody frames without boxes. He decided to purchase the frames and have the boxes constructed and installed at Rapol's factory in Teheran.

Pursuant to Rapol's order, six trailer underbody frames were shipped to Iran. However, they were not TD–27 underbody frames, but were of the separate-unit type which remained on the ground while the box alone lifted into the dumping position. On September 8, 1975, Rapol received notice that the frames had arrived in the port of Bandar Shahpour. The two large packages containing the frames did not clear customs until September 17, 1975, at which time they were placed in the customs yard. They remained in the yard for three and one-half weeks because overland transportation was not immediately available. Rapol finally was able to have the frames trucked to the site of its construction project, where they arrived around October 10, 1975.

The frames remained packaged at the construction camp until mid-November, when they were sent on to Teheran. When, upon arrival, the frames were removed from their packaging, Rapol discovered that they were not what had been ordered. The discovery was made between the 15th and 20th of November. On November 25, 1975, Rapol informed Jahn that the goods would not be accepted. Jahn took the position, however, that Rapol's rejection was ineffective, because it came too late. Judge Cooper held as a matter of law that Jahn was right. We disagree.

■ Under the Uniform Commercial Code, the New York version of which is applicable under the terms of the contract, a buyer is given a reasonable time to inspect goods upon their receipt and to reject them by seasonable notification if they are found to be non-conforming. N.Y.U.C.C. § 2–602(1) (McKinney 1964). What is a reasonable time for the doing of these acts depends upon the "nature, purpose and circumstances" of the acts. N.Y.U.C.C. § 1–204(2) (McKinney 1964); *see Schnitzer v. Lang,* 239 N.Y. 1, 5, 145 N.E. 65 (1924).

Under established New York law, which did not change materially with the enactment of sections 2–602 and 1–204(2), these are generally held to present questions of fact for the jury. *See, e.g.:*

*Pierson v. Crooks,* 115 N.Y. 539, 551, 22 N.E. 349 (1899).

"But the vendee has a reasonable time for examination and to give notice, and what is a reasonable time is usually a question of fact and not of law, to be determined by the jury upon all the circumstances, including as well the situation and liability of injury to the vendor from delay, as the convenience and necessities of the vendee."

*Greacen v. Poehlman,* 191 N.Y. 493, 498, 84 N.E. 390 (1908).

"What is a reasonable time is generally a question of fact for the jury...."

*Grabfelder v. Vosburgh,* 90 A.D. 307, 310, 85 N.Y.S. 633 (1904).

"Ordinarily what constitutes a reasonable retention of goods for examination and inspection is a question of fact."

*See also Spinella v. Atlantic Tug and Equipment Co.,* 283 A.D. 259, 262, 127 N.Y. S.2d 641 (1954); *Maier v. Rebstock,* 92 A.D. 587, 589, 87 N.Y.S. 85 (1904); *McCormick Harvesting Machine Co. v. Warfield,* 33 A.D. 513, 515, 53 N.Y.S. 737 (1898); *Freier v. Shayani,* 16 Misc.2d 31, 35, 183 N.Y.S.2d 198 (1958), *aff'd,* 19 Misc.2d 297, 194 N.Y. S.2d 613 (1959), *appeal dismissed,* 10 A.D.2d 710, 202 N.Y.S.2d 983 (1960).

As with any "general rule", *Greacen v. Poehlman, supra,* 191 N.Y. at 498, 84 N.E. 390, the one quoted above is not without its exceptions. For example, reasonableness was held to be a question of law in *Brown & Lowe Co. v. Potolski,* 221 A.D. 299, 300, 223 N.Y.S.2d 71 (1927), where the vendee retained a paving machine for sixteen months and used it on two separate road contracts before attempting to reject it. See also *Bangor Clothing Co. v. Superior Sportswear Corp.,* 22 A.D.2d 864, 254 N.Y. S.2d 415 (1964), *aff'd,* 16 N.Y.2d 1018, 265 N.Y.S.2d 901, 213 N.E.2d 312 (1965), where 281 oil-stained and improperly cut suits were delivered on November 15, 1963, the

vendee's claim of defects was not made until April 22, 1964, when it was incorporated in the vendee's answer to the vendor's complaint, and the vendee continued to make payments on account with knowledge of the defects. However, the instant case fits more comfortably within the general rule than within the exceptions.[1]

■ The sale herein did not involve perishable goods nor goods which fluctuated rapidly in price. *See* 51 N.Y.Jur. *Sales* § 138. Moreover, the variance from the terms of the sales contract might well have gone unnoticed for some time by an inexpert observer. *Id.* The six chassis frames came in two large bundles, each of which was approximately eight feet wide, twenty-eight feet long, nine feet high, and weighed over ten tons. The disassembled chassis were piled three high, and had boxes on and about them. The invoice clearly identified them as TD–27 models. We have examined a blueprint and photos of the chassis,[2] and we are not prepared to hold as a matter of law that, disassembled and resting three high in a bundle twenty-eight feet long and nine feet high, the chassis would be readily recognizable as varying from the contract specifications. Neither are we prepared to hold as a matter of law that Rapol should have pulled the ten-ton bundles apart before they reached their ultimate destination in order to make a more thorough examination. These were factual issues which should have been submitted to the jury, particularly where there was no showing of substantial prejudice to Jahn resulting from delayed rejection.

Because we hold that the district court erred in holding as a matter of law that Rapol had accepted the non-conforming goods, the district court's discussion con-

cerning revocation of acceptance becomes moot. Accordingly, we vacate that portion of the district court's order which holds that Rapol did not revoke its acceptance, and we do not consider the merits of the district court's determination on this issue.

■ Rapol offered no probative evidence to support its claim of fraud. Although the shipping invoice for the trailer chassis incorrectly described them as TD–27 Models and this permitted Jahn to collect on Rapol's letter of credit, there is nothing in the record to indicate that Jahn was even aware of the misdescription. We affirm that portion of the district court's order which dismissed the fraud claim.

Except as to the cause of action for fraud, the case is remanded to the district court for further proceedings consistent with this opinion.

■

---

1. We find little of precedential value in most of the cases cited in the district court's opinion. They dealt with such matters as malicious prosecution, *Rawson v. Leggett,* 184 N.Y. 504, 77 N.E. 662 (1906); nuisance, *McCarty v. Natural Carbonic Gas Co.,* 189 N.Y. 40, 81 N.E. 549 (1907); the unlawful discharge of an employee, *Jerome v. Queen City Cycle Co.,* 163 N.Y. 351, 57 N.E. 485 (1900); the existence of a posthumous contract, *Tousey v. Hastings,* 194 N.Y.

79, 86 N.E. 831 (1909); and duress in the execution of a contract, *Glicman v. Barker Painting Co.,* 227 A.D. 585, 238 N.Y.S. 419 (1930).

2. The blueprint, which contains no model number, was forwarded by Lufkin to Jahn on June 12, 1975, and forwarded by Jahn to Iran. However, neither Jahn's nor Rapol's representative checked the drawing against Model TD–27, because each assumed that they were the same.