## No. 16,701.

### McCoy et al. *v.* Pastorius et al.
(246 P. [2d] 611)

Decided June 9, 1952.   Rehearing denied July 7, 1952.

Messrs. HOLLAND & HART, for plaintiffs in error.

Mr. C. L. HARRISON, Mr. J. V. CONDON, for defendants in error.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the court.

WE will herein refer to plaintiffs in error as McCoy and Jensen, and to defendant in error Pandora Metals, Inc., as Pandora.

Pandora, a corporation, and L. M. Pastorius, a stockholder thereof, as plaintiffs, filed their complaint against McCoy and Jensen in the district court of Jefferson county. In the complaint it was alleged that Pandora owned certain mining claims in Boulder county upon which were located peat moss deposits which were valuable commercially. It was further alleged that former officers of Pandora, acting on their own initiative and without approval of the board of directors, entered into contracts with McCoy and Jensen giving them the exclusive privilege of removing the peat moss from said mining properties. The written agreement in effect at the time the complaint was filed was attached to the complaint as Exhibit A. It also was alleged in the complaint that the agreement was void and of no effect because the former officers were not authorized by the board of directors to issue or enter into said contract and for the further reason that the agreement was lacking in mutuality and was unilateral. Plaintiffs sought an adjudication decreeing said contract to be void.

In their answer, McCoy and Jensen denied that said agreement was void, and alleged that plaintiffs were estopped to maintain the action since McCoy and Jensen had fully performed their contract for a period of years and had invested money and labor in and upon the premises with the full knowledge of plaintiffs; that Pandora had permitted its president to act with full and complete authority to bind the corporation to any agreement over a period of many years and that McCoy and Jensen relied on his apparent authority as shown by this course of dealing; that the contract under which

McCoy and Jensen were operating was ratified by the board of directors and stockholders in that all benefits accruing thereunder were accepted by them with knowledge of the existence of the agreement; that plaintiffs' claim was barred by laches and by the three-year statute of limitations; and that plaintiff Pastorius, as a stockholder, had no interest in the action and had no valid claim for relief.

Trial was to the court without a jury, at the conclusion of which the court entered findings that the contract was executed without the knowledge or approval of the board of directors; that the terms thereof were not disclosed to the directors or stockholders until August 1949; that the directors acted with reasonable promptness in repudiating the contract; that the agreement was executed in part and executory in part and was void as to the executory portion thereof because it lacked mutuality; that McCoy and Jensen had removed peat moss after notice of cancellation of the contract and had tendered payment at the .rate of ten cents per cubic yard, which tender was rejected by plaintiffs and thereafter paid into the registry of the court; that the contract never was ratified or approved by the directors or stockholders; that no element of estoppel operated against plaintiffs; and that the claim was not barred by laches or the statute of limitations.

The trial court adjudged the agreement null and void; enjoined McCoy and Jensen from going upon the premises to remove any peat moss; authorized the removal of equipment placed thereon; and directed the payment to Pandora of the sum of $925.90 paid into the registry of the court by McCoy and Jensen in full settlement of the peat moss removed during the year 1950. Cross specification of error was filed by Pandora in which it was asserted that the trial court erred in ordering Pandora to accept ten cents per cubic yard as payment in full for peat moss mined by defendants after they had notice of rescission.

The contract in effect at the time the suit was filed was dated May 5, 1945. On behalf of Pandora it was signed by A. E. Blakesley, president, and M. F. Lockwood, secretary. Generally, it provided for the removal of peat moss by McCoy and Jensen from the premises owned by Pandora, with the right of ingress and egress across and upon any part of the property and to place equipment thereon, the right to construct and maintain roadways, and to use ten acres of ground for the purpose of drying and conditioning said peat moss for market. McCoy and Jensen agreed to pay ten cents per cubic yard for the peat moss removed from the property, with a minimum payment in any event of $100.00 per annum. The lease, by its terms, would expire May 5, 1955. The said contract contained the following further provision: "It is mutually understood and agreed that, if Lessee shall for any reason decide to cease operations hereunder, it may surrender this lease, grant and option upon paying to Lessor any balance of the minimum royalty payment provided for hereunder for the year ending next after such termination together with any excess royalty payments which may be due at the time of such surrender, and thereafter this lease, grant and option shall be cancelled and terminated, and both parties shall be relieved of any further liability hereunder."

McCoy and Jensen had operated under similar agreements subsequent to 1933 and all negotiations for these agreements were conducted by A. E. Blakesley as president of the corporation. The only income that Pandora ever received was from the sale of stock, or from royalties paid by McCoy and Jensen under their several contracts. The management of the corporate affairs had, for many years, been turned over to A. E. Blakesley. In December, 1927, the board of directors of the Pandora Corporation consisted of five members. At that time two of the members resigned and the remaining three adopted a resolution reading as follows:

"Resolved that the President of this corporation, Mr. A. E. Blakesley, be delegated, authorized and instructed to transact any and all business for this corporation; to use such means as he may deem best in raising funds for development and for corporate needs; to buy machinery and let contracts upon such terms and conditions as the situation in his judgment may warrant; to have full charge and management of all corporate business and to use any lawful and legitimate means to protect the interests of this corporation and to keep the property in operation, said authority to continue until rescinded by this Board."

Between December 20, 1927, and October 25, 1945, four meetings of the board of directors of the corporation were held. In the minutes of these meetings there is no reference whatever to any contract authorizing the removal of peat moss by McCoy and Jensen. There is no dispute concerning the fact that individual members of the board had personal knowledge, over a long period of time, that McCoy and Jensen were operating on the property of Pandora and were paying the corporation ten cents per cubic yard for the peat moss removed. McCoy and Jensen could only work on the property for about two and one half months of each year due to the fact that it was located at a high altitude and weather conditions would not permit longer operation.

A. E. Blakesley died in January, 1949, and his son E. T. Blakesley, who succeeded his father as president, testified that he had visited the property nearly every year since 1925 and had discussed the matter of removal of the peat moss with stockholders on numerous occasions. Mabel Fling was a director from October 1945 and was the daughter of A. E. Blakesley. She asked her father about the lease, and whether there was any chance of voiding it. She stated that he gave her no information about the terms of the lease, but that she knew they were getting ten cents a cubic yard, "and

of course, didn't like it naturally." However neither she nor any other members of the board of directors took any action whatever until long after the death of A. E. Blakesley.

In August, 1949, the new president of the company found a copy of the contract here involved. At that time another peat moss removal season was drawing to a close, and, with full knowledge concerning all the details of the contract, the board of directors of Pandora, without objection, accepted the royalties paid by McCoy and Jensen on December 20, 1949. In April, 1950, the directors of the corporation decided to renounce the contract. They prepared and forwarded to McCoy and Jensen under date of April 7, 1950, a notice stating that the agreement was invalid, and enclosed a form for their signature, the effect of which was to release all rights and claims under the contract. McCoy and Jensen declined to execute this release, claiming that the contract was binding. This suit was filed July 14, 1950.

Questions to be Determined.

First: *When a corporation by resolution of its board of directors expressly empowers an officer to carry on the business of the company, and to enter into contracts; when such officer is allowed to control and manage all business transactions of the company for a period of twenty-two years during which time he executes a contract, and renewals thereof, disposing of peat moss deposits; and where, with full knowledge of all members of the board of directors, the said deposits are removed and payments made therefor for several years as provided by this contract; can the board of directors legally repudiate the agreement upon the death of the officer who thus had managed the corporation, upon the ground that the contract was not authorized by the board of directors, and that the directors had no full and complete knowledge of all the terms and conditions thereof?*

This question is answered in the negative. It is argued,

in support of an affirmative answer to the question, that section 27 (a), chapter 41, '35 C.S.A. requires approval of the contract by the board of directors before validity attaches. Said statute provides, inter alia, "The corporate powers shall be exercised by a board of directors or trustees, * * *." It further is contended that the board of directors could not legally delegate to the president the power to bind the corporation to the terms of the contract.

We deem it sufficient, in answering these arguments, to quote from volume 2, Fletcher Cyclopedia Corporations (perm. ed.) page 396, section 508, as follows: "If it is provided that corporate powers 'must' be exercised by the board of directors, then the corporation can be bound by no one else but that body. But a provision in a statute, charter, articles of incorporation or by-laws, that the corporate powers shall be exercised by the board of directors or trustees, does not preclude corporate liability for acts of officers where the power to contract or otherwise act has been expressly or impliedly conferred on officers by resolution, conduct or otherwise. Thus a statutory or charter provision that the corporate powers shall be exercised by the board of directors or trustees does not preclude corporate liability for the acts and contracts of one whom the corporation allows to control, wholly or to a considerable extent, its business transactions. As stated by Justice Marshall of Wisconsin, 'technically speaking, a corporation cannot act contractually, except by its board of directors, or their authority; but that has so many exceptions as to be of little use in practical affairs. A corporation may be bound by its custom of doing business. It may be bound by acquiescence; it may be bound by accepting and retaining the fruits of a transaction and in other ways without any action of its board of directors.'" *McKinley v. Mineral Hill Consol. Min. Co.*, 46 Wash. 162, 89 Pac. 495; *First Trust Co. v. Miller*, 160 Wis. 336, 151 N.W. 813.

In *German American Indemnity Co. v. State Mercantile Bank*, 26 Colo. App. 242, 142 Pac. 189, no formal approval on the part of the board of directors had been given concerning the execution of a promissory note on behalf of the corporation, but by resolution of the board of directors the president had been given "entire charge of the affairs of the company." In holding the corporation liable, our Court of Appeals said:

"Therefore, from the foregoing recited facts, it is apparent that the directors of the defendant company had or should have had full knowledge of the acts in controversy, and, whether through inattention or otherwise they permitted them to stand, they are as much bound to those who were not aware of any want of authority in the officers in the matter as if the requisite power had been directly conferred."

\* \* \*

"The acts under consideration having been performed by Harrell and Mitchell with knowledge thereof on the part of a number of the directors and employes of the company, and without any objection therefrom, it cannot and ought not to be heard to complain."

It is clear that the instant case lies clearly within the principles hereinabove announced. The board of directors by resolution specifically turned over to its president complete authority to enter into the questioned agreement, and since 1933 McCoy and Jensen have operated under the terms of this or similar agreements; have fully complied with the conditions on their part to be kept and performed; and all benefits accruing to the corporation have been accepted without objection. Under these circumstances the corporation cannot successfully contend that the contract was not legally authorized.

■■ Second: *Under the facts presented by this record, can the contract be repudiated by the corporation upon the ground that it was unilateral and lacking in mutuality?*

This question is answered in the negative. The trial

court, at the conclusion of the evidence and prior to making written findings of fact and entering judgment, made certain statements among which was the following: "The contract is unilateral; it provides, of course, that the lessee has certain rights and the lessor has no recourse in the event he sees fit to stop producing peat, manufacturing peat, or hauling peat away from the grounds belonging to stockholders of a corporation which would be unfair as far as the stockholders are concerned. The Court finds that the contract is void upon its face." These remarks unquestionably were based upon the paragraph in the contract reserving to McCoy and Jensen the option to surrender the lease upon payment to Pandora of the balance of minimum royalties for the year ending next following such termination. This provision was the basis for the court's written finding that the contract was void "as to the executory portion because it was lacking in mutuality." In reaching this conclusion the trial court erred. The contract is not unilateral. A unilateral contract is one which is supported by an executed consideration. Such an agreement cannot be voided upon the ground that it is unilateral. *Rifle Potato Growers Co-operative Association v. Smith,* 78 Colo. 171, 240 Pac. 937. Some confusion appears in the decided cases in distinguishing between a unilateral contract, as thus defined, and one in which there is an absence of mutuality. While mutuality of contract is an essential element of every enforceable agreement, it does not follow that an option reserved by one party to terminate a contract will render it void. We said in *Stanton v. Union Oil Company of California,* 111 Colo. 414, 142 P. (2d) 285, "Nor is mutuality of obligation essential, where there is any other consideration for the contract." The general rule applicable to the instant case is stated in 17 C.J.S., page 888, section 399, as follows: "A contract may provide that it shall come to an end at the option of one or either of the parties, and such a stipulation when fairly entered

into will be enforced if not contrary to equity and good conscience. The presence of such a provision has no effect on the binding obligations of the contract as long as the parties continue to act under it before revoking or terminating it." In the instant case the privilege of termination was bargained for by McCoy and Jensen and represents a distinctive part of the promise of Pandora. In *Bennett's, Inc. v. Krogh,* 115 Colo. 18, 168 P. (2d) 554, we recognized that an option by one of the parties to terminate a contract may be valid and binding upon the parties. There is, in the contract before us, adequate consideration to support the promises of each party, and the agreement is not lacking in mutuality.

Third: *Does the lease agreement is the instant case amount to the putting of an encumbrance upon a mine within the meaning of the statute requiring approval of stockholders before a valid encumbrance can be placed thereon?*

This question is answered in the negative. Section 27 (e), chapter 41, '35 C.S.A., provides, inter alia: "The board of directors or trustees of a mining or manufacturing corporation shall not have the power to encumber the mines or plant of such corporation, * * * until the question shall have been submitted at a special meeting of the stockholders, * * *." It also is provided by this section, "that any lease that does not encumber the mines or plant of such corporation, or the principal machinery incident thereto, except by the granting of a leasehold interest, shall not be deemed an encumbering of such property without regard to the length of the term granted; * * *."

Thus, by the terms of the statute itself, no encumbrance requiring the approval of the stockholders was placed upon said property by the production lease under which McCoy and Jensen operated the properties. Even assuming that the peat moss deposits constituted a mine, a point which we do not decide, the statute is not ap-

plicable because the lease agreement is not an encumbrance upon the property.

The judgment accordingly is reversed.