**EAST LARIMER COUNTY WATER DISTRICT, Fort-Collins-Loveland Water District and North Weld County Water District, Plaintiffs-Appellees, and Cross-Appellants,**

v.

**CENTRIC CORPORATION and the Travelers Indemnity Company, Defendants-Appellants, and Cross-Appellees.**

**No. 82CA0107.**

Colorado Court of Appeals, Div. I.

July 19, 1984.

Rehearing Denied Sept. 6, 1984.

Certiorari Denied Dec. 17, 1984.

Wood, Herzog, Osborn & Bloom, P.C., David L. Wood, Fort Collins, for plaintiffs-appellees and cross-appellants.

Conover, McClearn, Heppenstall & Kearns, P.C., Hugh J. McClearn, Michael J. Cook, Denver, for defendants-appellants and cross-appellees.

SMITH, Judge.

Centric Corporation entered into a contract with East Larimer County Water District, Fort Collins-Loveland Water District,

and North Weld County Water District (the districts) for the construction of an addition to the water treatment facility known as the Soldier Canyon Filter Plant (the project). Shortly after beginning construction, Centric ceased work and attempted to withdraw the bid it had submitted to the water districts for construction of the addition.

The districts sued both Centric and the surety on its performance bond for breach of contract. Centric denied that a formal contract ever came into being and counterclaimed for the reasonable value of the labor and materials it had furnished.

Following trial, judgment was entered upon the jury's verdict against Centric and its surety, Travelers Indemnity Company, in the amount of $117,325. The counterclaim of Centric and Travelers was denied. They appeal and the districts cross-appeal the denial of their request for prejudgment interest. We affirm in part, reverse in part and remand with directions.

### I.

Much of the dispute in this case stems from certain language contained within a typed form captioned "Information for Bidders." This form prescribed the bidding procedures and described the manner in which the final contract was to be executed. The specific clause involved here provided as follows:

> "The Owner within ten (10) days of the receipt of acceptable PERFORMANCE BOND, PAYMENT BOND and AGREEMENT signed by the party to whom the AGREEMENT was awarded shall sign the AGREEMENT and return to such party an executed duplicate of the AGREEMENT. Should the OWNER not execute the AGREEMENT within such period of time, the BIDDER may, by written notice, withdraw his signed AGREEMENT. Such notice of withdrawal shall be effective upon receipt of the notice by the OWNER."

Centric first asserts that it was entitled to a directed verdict, or subsequently a judgment notwithstanding the verdict. It bases its argument on the districts' admitted failure, under the terms of this clause, to return an executed copy of the agreement to Centric within ten days. It argues that this non-compliance by the districts gave Centric the right to withdraw its bid for the project and that, thus, no contract came into existence. We disagree.

■ When water districts enter into contractual relations, their rights and duties are governed, generally, by the law applicable to contracts between private parties. See §§ 37–3–109 to 37–3–110, C.R.S. In the typical situation an advertisement for bids is released and bids are submitted which serve as the functional equivalent of a contract offer. As in this case, the lowest qualified bidder will customarily be awarded the contract and the bidder will be notified of the acceptance of his bid.

■ The legal principle that an offer to contract may be withdrawn at any time prior to acceptance is universally accepted and requires no citation of authority here.

■ Thus, we must determine here whether there was a valid acceptance by the districts even though the signed contracts were not returned to Centric within ten days after being accepted by Centric. We hold that there was, and that, therefore, a valid and enforceable contract came into existence.

However, even assuming, arguendo, that the ten day requirement was intended to relate to the "return" of the completed contracts, we conclude that this requirement was waived by Centric. It was undisputed that the contract was signed by the districts within ten days of the date Centric signed it, that Centric was so notified, and that signed copies of the contract documents were in fact returned to Centric, albeit after the expiration of ten days. Both sides thereafter attended a comprehensive preconstruction conference at which no objection to the contract was raised, a notice to proceed was sent to Centric, and both sides started performance under the terms of the contract.

Admittedly, there were no misunderstandings as to the terms of the contract when Centric started work. It was not until problems had arisen concerning the manner of performance of the contract, and a delay had occurred based upon transfer of title to the districts of a portion of the land that Centric first asserted the invalidity of the contract based upon untimely acceptance by the districts.

■ Waiver has been defined as the voluntary abandonment or surrender, by a capable person, of a right known by him to exist, with the intent that he shall be forever deprived of its benefit. *People ex rel. Metzger v. Watrous*, 121 Colo. 282, 215 P.2d 344 (1950). Thus, because waiver is primarily a matter of intent and therefore a question of fact, it was within the province of the jury to consider the conduct of Centric in determining whether Centric had waived its rights relative to acceptance.

Even though Centric's officers denied that they intended to waive any rights, the issue was one of disputed fact. Here, the jury was properly instructed on this issue, and we may not, as an appellate court, disturb its finding that Centric did, in fact, waive its rights. *Peterson v. Ground Water Commission*, 195 Colo. 508, 579 P.2d 629 (1978).

## II.

■ Centric next argues that even if there was a valid contract, because of material breaches by the districts, it was entitled to terminate its responsibilities under the contract and to be awarded damages on a theory of quantum meruit. Under proper instructions the jury determined that the districts' breaches, if any, were not material and, thus, concluded that Centric's defense and the counterclaim seeking damages based thereon must fail. Again, because the jury resolved these disputed factual issues under proper instructions, we are not at liberty to substitute our view for its on this issue. *Peterson, supra.*

## III.

Centric also claims that if it is liable at all, its liability for damages for breach of contract must be limited to the liquidated damages specified in the contract.

■ The trial court properly ruled that the contract provision on liquidated damages was applicable only if the project was satisfactorily completed, albeit late, and not to the situation here in which the contractor had abandoned the contract and refused to complete performance. *See Bassett Construction Co. v. Schmitz Painting Contractors of Colorado, Inc.*, 533 P.2d 503 (Colo.App.1975) (not selected for official publication).

## IV.

The districts have cross-appealed, asserting that the trial court should have awarded prejudgment interest pursuant to § 5–12–102, C.R.S. (1983 Cum.Supp.). They argue that the damages were fixed in amount and were known to Centric based upon the difference between Centric's bid and the second low bid which the districts subsequently accepted. Further, the districts argue that even if the amount of damages had not been liquidated, prejudgment interest should have been allowed pursuant to § 5–12–102(3), C.R.S. (1983 Cum.Supp.). Centric argues moratory interest is not applicable to a case of this nature and, further, that the districts' request for interest was not timely made.

The record reveals that the districts prayed for interest at a rate of 8% from the date they were required to advance funds above and beyond the bid of Centric to date of judgment. Evidence was introduced as to these payments and the districts timely filed their motion for costs and interest, substantiating the date of final payment by an affidavit including a copy of the check made thereon.

■ Thus, because this action was also based upon the bond provided by Travelers, we conclude the districts are entitled to that interest at the rate of 8% per annum compounded annually pursuant to § 5–12–

102(2), C.R.S. (1983 Cum.Supp.) from the date of their final payment to the substitute contractor which, by undisputed evidence is the 11th day of December 1980 until date of judgment.

Because of our disposition of this issue based on the pleadings and the evidence, we do not address the districts' alternative claim for moratory interest from the initial date of breach.

## V.

We have considered the other arguments made here on appeal and find them either to be disposed of by our analysis of the case, or to be without merit.

Judgment affirmed in part, reversed in part, and cause remanded for correction of the judgment consistent herewith.

PIERCE and TURSI, JJ., concur.