**SUMMIT FOODS, INC., Plaintiff,**

v.

**GREYHOUND FOOD MANAGEMENT, INC., Defendant.**

**Civ. A. No. 89–B–354.**

United States District Court, D. Colorado.

Dec. 12, 1990.

Woon Ki Lau, Kurt E. Hertel, Lau & Choi, P.C., Denver, Colo., for plaintiff.

Diana L. Terry, Erik K. Foster, Moye, Giles, O'Keefe, Vermeire & Gorrell, Denver, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

In this diversity case, plaintiff Summit Foods, Inc. (Summit) alleges that defendant Greyhound Food Management, Inc. (Greyhound) breached a sublease agreement. Greyhound has filed a counterclaim alleging that it was Summit that breached the sublease agreement. Cross motions for summary judgment have been filed. I conclude that it was Summit and not Greyhound that breached the sublease. Hence, Greyhound's motions for summary judgment are granted.

### I.

The following facts are undisputed. On June 21, 1985, Greyhound entered into a lease (the master lease) with the owners of a building (the building owners) under which Greyhound agreed to operate a food court in the building. The lease was to run for ten years. Thereafter, Greyhound opened and operated a Burger King restaurant and an ice cream concession in the food court.

On January 4, 1988, Greyhound subleased the portion of the food court formerly containing the ice cream concession to Summit for a period of seven and one-half years (the sublease). Summit then opened several restaurants in the space.

On January 31, 1989, Greyhound ceased operation of the Burger King in the food

court. Summit filed this lawsuit on February 9, 1989 alleging that shutting down the Burger King was a material breach of the sublease. Summit ceased its operations at the food court on April 28, 1989 and stopped making any rental payments.

On June 1, 1989, Greyhound and the building owners reached an agreement in which Greyhound bought out the remaining term for which it was liable under the master lease (the buy out). As part of the agreement, Greyhound reserved the right to assert a claim against Summit for breach of the sublease. The agreement also stated that if termination of the master lease would prejudice Greyhound's right to assert such a claim, then the master lease would be deemed to be in full force and Greyhound would be deemed to have assigned to the building owner all of Greyhound's rights, except that Greyhound reserved its right to assert a claim against Summit.

## II.

■ "The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). To make a sufficient showing, a party may not rest on mere allegations or denial, but instead must present enough evidence that a reasonable jury could return a verdict for that party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

## III.

■ Both parties move for summary judgment on Summit's claim that Greyhound breached the sublease. Both parties also move for summary judgment on the liability issue of Greyhound's counterclaim. Summit's primary defense to the counterclaim is the affirmative defense that Greyhound breached the sublease first. Conse-quently, the essential dispute for both the original claim and the counterclaim is whether Greyhound breached the sublease by closing the Burger King. Summit bears the burden of proof on this issue. Thus, the summary judgment standard mentioned above is applicable. In this diversity action, the parties agree that Colorado substantive law applies. Summit presents several reasons why closing the Burger King constituted a breach of the sublease under Colorado law. First, it argues that closing the Burger King was a breach of the master lease. However, even if this is correct, Summit does not have standing to assert this claim. Summit was not a party to the master lease. Nor is Summit in privity with the building owners so that Summit can assert the building owners' contractual rights. *See V.O.B. Co. v. Hang It Up, Inc.,* 691 P.2d 1157, 1159 (Colo.App.1984) ("there is no privity of contract between the original lessor and the sublessee").

■ Summit next argues that breach of the master lease constitutes breach of the sublease because the master lease is incorporated into the sublease. Summit's reliance on paragraph 50 of the sublease for this proposition is misplaced.

Paragraph 50 reads in part:
Tenant agrees not to suffer any act or omission on the Premises which will violate any of the terms and conditions of the said Prime Lease, Tenant hereby admitting knowledge of and famili[ ]arity with the terms and conditions of said Prime Lease.

This paragraph requires that Summit comply with the terms of the master lease. Greyhound has no reciprocal duty to Summit to comply with the terms of the master lease. Greyhound's duty under that lease is to the building owners and Summit has no standing to assert their rights.

■ Summit next contends that by closing the Burger King Greyhound breached paragraph 6(A) of the sublease. This paragraph reads in part: "Landlord . . . agrees that all retail Tenant(s) in the Building will be required to remain open until 6:00 p.m., Monday through Friday." Summit contends that Greyhound was a retail tenant

who did not remain open until 6:00 p.m. As a matter of law, I disagree. When Greyhound closed the Burger King, it ceased to be a retail tenant and had no duty to keep the Burger King open until 6:00 p.m.

Summit's other arguments are unsupported by affidavit or otherwise. Thus, Greyhound is entitled to summary judgment. *See Celotex*, 477 U.S. at 323–24, 106 S.Ct. at 2552–53. I conclude that by closing the Burger King Greyhound did not breach any agreement with Summit.

■ Summit contends that even if Greyhound did not breach the sublease, it is not liable on Greyhound's counterclaim. It argues that because there is lack of mutuality Greyhound has no remedy. Paragraph 50 of the sublease reads in part: "In the event the [Master] Lease is terminated for any cause, then this Sublease shall automatically terminate at the same time and [Greyhound] shall not be under any responsibility or liability therefor[ ] to [Summit]." Summit argues that because the sublease could be terminated at any time by the actions of Greyhound, the sublease is not enforceable. I disagree.

In *McCoy v. Pastorius*, 246 P.2d 611 (Colo.1952), the Colorado Supreme Court held that a contract that could be terminated by one party was not unenforceable for lack of mutuality.

A contract may provide that it shall come to an end at the option of one or either of the parties, and such a stipulation when fairly entered into will be enforced if not contrary to equity and good conscience. The presence of such a provision has no effect on the binding obligations of the contract as long as the parties continue to act under it before revoking or terminating it.

*Id.* at 615 (quoting 17 C.J.S. Contracts § 399 at 888).

In this case, Summit has made no showing that the contract was not fairly entered into. Therefore, the option to terminate the sublease does not render the sublease unenforceable for want of mutuality.

Summit relies on *O'Done v. Shulman*, 124 Colo. 445, 238 P.2d 1117 (1951). That case is distinguishable because it involved one party's ability to terminate a contract for any reason. Here, the sublease could be terminated with impunity only if the master lease terminated. Summit does not contend that Greyhound could terminate the master lease for any reason. Thus, the "arbitrary discretion" which concerned the court in *O'Done, id.* 238 P.2d at 1119, is absent. Moreover, *McCoy* overruled *O'Done* to the extent that *O'Done* holds that contracts with options to terminate are unenforceable.

■ Summit also argues that Greyhound has no actual damage. In *Schneiker v. Gordon*, 732 P.2d 603 (Colo.1987), the Colorado Supreme Court held that damages for breach of a commercial real estate lease should be analyzed under contract law principles. Thus, "the measure of damages is the amount it takes to place the landlord in the position he would have occupied had the breach not occurred, taking into account the landlord's duty to mitigate." *Id.* at 612. Using this formula, Summit contends that the amount Greyhound saved in its buy out should be deducted from the amount Summit now owes. I disagree.

■ "If the landlord has avoided any cost by not having to perform, that cost should be deducted from his recovery...." *Id.* However, "loss avoided is subtracted only if the saving results from the injured party not having to perform rather than from some unrelated event." Restatement (Second) of Contracts § 347 comment d (1981). Here, any expenses Greyhound saved in not having to perform its obligations under the sublease must be deducted. However, the money Greyhound saved from the buy out should not be deducted. Those savings are unrelated to Greyhound's sublease with Summit. Greyhound could have negotiated the buy out even if Summit had not breached the sublease. *See* Sublease, ¶ 50.

*Schneiker* is consistent with this conclusion. In that case the sublessor was only seeking lost profits. 732 P.2d at 606. Since net profits contemplate a deduction

for expenses, and expenses included rent under the master lease, the lessor there did not contend that his rental expense under the master lease should not be deducted. Thus, the court did not have before it, and consequently did not decide, whether the money a sublessor otherwise saves from terminating its master lease should be deducted where the sublessor is seeking more than lost profits. Under contract law principles, any money that Greyhound saved by terminating the master lease is unrelated to Summit's breach of the sublease and should not be deducted from its damages. *See* Restatement (Second) of Contracts § 347 comment d (1981).

Accordingly, I conclude that Greyhound is entitled to summary judgment on its counterclaim on the issue of liability. Factual questions remain on the issue of damages.

Accordingly, it is ORDERED that:

(1) Summit's motions for summary judgment are DENIED;

(2) Greyhound's motion for summary judgment on Summit's complaint is GRANTED, and that complaint is DISMISSED;

(3) Greyhound's motion for partial summary judgment on liability under its counterclaim is GRANTED;

(4) the Court's Order of July 19, 1990, granting the joint motion to bifurcate trial is VACATED as moot; and

(5) the trial to court set for Tuesday, February 19, 1991 at 8:30 a.m. in Courtroom C–204, 1929 Stout Street, Denver, Colorado will be held on the issue of damages.