Marjorie RAINS, Plaintiff–Appellant,

v.

## FOUNDATION HEALTH SYSTEMS LIFE & HEALTH, f/k/a QualMed, Defendant–Appellee.

No. 99CA2398.

Colorado Court of Appeals, Div. I.

March 29, 2001.

Jean E. Dubofsky, P.C., Jean E. Dubofsky, Boulder, CO; Weinberger & Kanan, P.C., Thomas L. Kanan, Denver, CO; The Frickey Law Firm, Janet L. Frickey, Lakewood, CO; The Law Offices of F. James Donnelly, P.C., F. James Donnelly, Greenwood Village, CO; Fogel, Keating, Wagner, Polidori, Shafner, Struthers & Heron, William L. Keating, David R. Struthers, Gersh & Helfrich, LLP, Miles M. Gersh, James Helfrich, The Law Offices of John Astuno, John J. Astuno, Denver, CO; Law Offices of Clifford A. Cantor, Clifford A. Cantor, Redmond, WA, for Plaintiff–Appellant.

Leboeuf, Lamb, Green & MacRae, L.L.P., Robert N. Miller, Frederick T. Winters, Denver, CO, for Defendant–Appellee.

Opinion by Judge VOGT.

Plaintiff, Marjorie Rains, appeals the judgment dismissing her complaint against defendant, Foundation Health Systems Life & Health, f/k/a QualMed, for lack of subject matter jurisdiction. We affirm.

Plaintiff filed a class action complaint on behalf of herself and other individuals covered under defendant's health plans. She alleged that defendant should have paid for certain medical expenses, incurred as a result of an automobile accident, for which she had been reimbursed by her personal injury protection (PIP) insurer. Defendant was obligated to pay for these expenses, plaintiff contended, because it had failed to comply with § 10–4–709(2), C.R.S.2000 (requiring carriers whose policy benefits have been coordinated with PIP benefits to file with the commissioner of insurance "evidence that such coordination has resulted in an equitable reduction in premiums or costs to beneficiaries"), and, under § 10–4–709(4), C.R.S. 2000, and *Ruppel v. Life Investors Insurance Co.*, 969 P.2d 725 (Colo.App.1998), that failure precluded it from enforcing its policies' coordination of benefits provisions, which reduced health benefits payable under the policies by the amount of any PIP benefits received.

Plaintiff sought injunctive and declaratory relief, disgorgement of profits, and actual and punitive damages under various theories, including breach of contract, breach of fiduciary duty, and violation of insurance and consumer protection statutes. The trial court dismissed the case on defendant's motion. It concluded that plaintiff's claims were within the scope of her policy's mandatory arbitration provision, and that it therefore lacked subject matter jurisdiction over the dispute.

I.

Plaintiff first contends that the trial court erred in concluding that the issue raised in her complaint was within the scope of the arbitration clause in defendant's policy. We disagree.

A.

Colorado public policy strongly favors the resolution of disputes through arbitration. *Huizar v. Allstate Insurance Co.*, 952 P.2d 342 (Colo.1998); *Byerly v. Kirkpatrick Pettis Smith Polian, Inc.*, 996 P.2d 771 (Colo. App.2000).

Thus, any doubts about the scope of an arbitration provision are to be resolved in favor of arbitration. A court may refuse to compel arbitration only upon a showing that there is no agreement to arbitrate or that the issue sought to be arbitrated is clearly beyond the scope of the arbitration provision. *Gergel v. High View Homes, LLC*, 996 P.2d 233 (Colo.App.1999); *see also City & County of Denver v. District Court*, 939 P.2d 1353 (Colo.1997) (court must compel alternative dispute resolution (ADR) unless it can say with positive assurance that ADR clause is not susceptible of any interpretation that encompasses subject matter of dispute).

To decide whether an arbitration agreement encompasses a dispute, the court must determine whether the factual allegations underlying the claims are within the scope of the arbitration clause, regardless of the legal label assigned to the claims. *Austin v. U S West, Inc.*, 926 P.2d 181 (Colo.App. 1996). In *City & County of Denver v. District Court, supra*, 939 P.2d at 1364, the supreme court noted that a party may not avoid a contractual arbitration clause merely

by casting its complaint in tort, and that "creative legal theories asserted in complaints should not be permitted to undermine the presumption favoring alternative means to resolve disputes."

■ A valid, enforceable arbitration agreement divests a court of jurisdiction over all issues within the scope of the agreement. *Mountain Plains Constructors, Inc. v. Torrez,* 785 P.2d 928 (Colo.1990); *Eychner v. Van Vleet,* 870 P.2d 486 (Colo.App.1993).

### B.

Plaintiff's policy includes the following arbitration provision:

Arbitration is the final process for the resolution of any dispute involving a Member and Foundation which arises out of or relates to this health plan, whether involving a claim in tort, contract or otherwise.

By enrolling in this health plan, Members agree that disputes will be decided by neutral arbitration, and they also agree to give up their right to a jury or court trial for the settlement of disputes. The decision of the arbitrator shall be final and binding. Each party is responsible for their own attorney fees and for an equal share of the costs of arbitration. The power of the arbitrator shall be limited to the determination of the interpretation of the terms of the applicable health plan contract and the arbitrator expressly does not have the power to grant any other relief or award. The arbitrator shall have no authority to make material errors of law or to award punitive damages or to add to, modify or refuse to enforce any agreements between the parties.

The policy also states that arbitration is to be "in accordance with the American Arbitration Association" (AAA), provides for a "single, neutral arbitrator who is licensed to practice law," and sets forth procedures to be followed.

■ The arbitration provision quoted above requires arbitration to resolve "any dispute ... which arises out of or relates to this health plan." The scope of arbitration clauses phrased in this language is broad and inclusive, rather than narrow and exclusive.

Such broad, unrestricted clauses make the "strong presumption favoring arbitration [apply] with even greater force." *City & County of Denver v. District Court, supra,* 939 P.2d at 1364 (quoting 1 M. Domke, *The Law of Practice on Commercial Arbitration* § 12.05 (rev. ed. supp.1993)); *see also Gergel v. High View Homes, LLC, supra* (because plaintiffs' statutory claims arose out of or were related to warranty agreement, all of their claims were encompassed by the broad arbitration provision in the warranty); *Austin v. U S West, Inc., supra* (discussing cases involving provisions for arbitration of claims "arising out of or relating to" an agreement). Further, such "unlimited" clauses were expressly found to be distinguishable from the limited arbitration provision at issue in *State Farm Mutual Automobile Insurance Co. v. Stein,* 886 P.2d 326, 328 (Colo.App.1994), on which plaintiff relies.

### C.

■ Notwithstanding the principles set forth above and the broad language in defendant's arbitration provision, plaintiff argues that the provision cannot be read to encompass the issue raised in this case. Her argument is based on the sentence in the provision that limits the power of the arbitrator to "the determination of the interpretation of the terms of the applicable health plan contract."

Contrary to plaintiff's contention, we are not persuaded that the issue in dispute here is beyond the power of the arbitrator, so as to warrant a conclusion that the clause is "not susceptible of any interpretation that encompasses the subject matter of the dispute." *See City & County of Denver v. District Court, supra,* 939 P.2d at 1364.

The core factual issue to be resolved in order to determine plaintiff's right to recover on all her claims is whether defendant's alleged noncompliance with § 10–4–709(2) renders its coordination of benefits provision unenforceable. In our view, the arbitrator's power to determine "the terms of the applicable health plan contract" includes the power to determine whether a particular provision in that contract—here, the coordination

of benefits provision—is enforceable. To make this determination, the arbitrator must necessarily decide the factual question whether defendant complied with § 10–4–709(2). We decline to presume, as plaintiff urges, that presenting this question to an arbitrator would be an "exercise in futility."

## II.

Having concluded that the dispute is within the scope of the arbitration clause, we next consider whether the arbitration requirement may be disregarded on the basis that the cost of arbitration would preclude enforcement of § 10–4–709(2). We conclude that it may not.

As an initial matter, we note that, while many of the cases cited by both plaintiff and defendant on this and other issues were decided under federal statutes, neither side has argued that the rationale of these cases is inapplicable to the issues presented here.

The arbitration provision in defendant's policy provides: "Each party is responsible for [its] own attorney fees and for an equal share of the costs of arbitration."

Plaintiff relies on cases that have adopted a *per se* rule that such fee-splitting provisions render arbitration clauses unenforceable because the cost of arbitration deters claimants from enforcing their rights. *See, e.g., Shankle v. B–G Maintenance Management of Colorado, Inc.*, 163 F.3d 1230 (10th Cir.1999); *see also Bradford v. Rockwell Semiconductor Systems, Inc.*, 238 F.3d 549 (4th Cir.2001) (summarizing cases).

However, in *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000), the Supreme Court—reversing one of the cases on which plaintiff relies—rejected that *per se* approach in favor of a case-by-case inquiry into whether the individual would in fact be precluded from vindicating his or her rights because of the cost of arbitration. The Court held that a party seeking to invalidate an arbitration agreement based on prohibitive costs "bears the burden of showing the likelihood of incurring such costs," and found that no such showing had been made in the case before it. It concluded that "[t]he 'risk' that Randolph

will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement," and that to invalidate the agreement on that basis would undermine the "liberal federal policy favoring arbitration agreements." *Green Tree Financial Corp.-Alabama v. Randolph, supra,* 531 U.S. at —, 121 S.Ct. at 522, 148 L.Ed.2d at 384.

■ Similarly here, the record does not establish that plaintiff, who seeks recovery of $9,520.47 in medical expenses for which she has already been reimbursed, would be likely to incur costs that would prohibit enforcement of her rights if she were required to go to arbitration rather than to court.

Plaintiff offered no evidence in the trial court of her ability to pay, but argued that the cost of arbitration made it "not economically rational" to seek to recover the amount of her claim. As to the arbitration cost, plaintiff cited another arbitration in which defendant and the claimant, proceeding under the AAA Commercial Arbitration Rules, had each spent $2,525 without an actual hearing. We note in this regard that the AAA Insurance Claims Dispute Resolution Procedures, which plaintiff contends would most probably apply in her case, contemplate an inexpensive proceeding with an administrative fee of $150 per party and a suggested compensation fee of $300 per day for the neutral arbitrator. We agree with the observation of the court in *Bradford v. Rockwell Semiconductor Systems, Inc., supra,* 238 F.3d at 556, that an individual cannot reasonably claim to be "deterred from pursuing his statutory rights in arbitration simply by the fact that his fees would be paid to the arbitrator where the overall cost of arbitration is otherwise equal to or less than the cost of litigation in court."

■ We recognize that plaintiff was attempting to bring her claims in court as a class action. However, arbitration clauses are not unenforceable simply because they might render a class action unavailable. *See Bowen v. First Family Financial Services, Inc.,* 233 F.3d 1331 (11th Cir.2000); *Stout v. J.D. Byrider,* 228 F.3d 709 (6th Cir.2000); *Johnson v. West Suburban Bank,* 225 F.3d 366 (3d Cir.2000); *Doctor's Associates, Inc. v.*

*Hollingsworth,* 949 F.Supp. 77 (D.Conn. 1996), *aff'd sub nom. Doctor's Associates, Inc. v. Bennett* (2d Cir. No. 96–9599, February 5, 1998).

Plaintiff notes that some states have permitted courts to order class-wide arbitration in cases such as this. The record is unclear as to whether plaintiff sought such relief in the trial court. However, even assuming the issue is properly before us, we decline either to hold that the arbitration provision is unenforceable because this case was filed as a class action or to order the trial court to certify the class and require class-wide arbitration.

■ In enacting the Uniform Arbitration Act, § 13–22–201, et seq., C.R.S.2000, the General Assembly demonstrated its endorsement of arbitration and adopted a detailed statutory scheme to facilitate arbitration. *See Huizar v. Allstate Insurance Co., supra.* Whether to recognize an exception to this statutory scheme when a case is brought as a class action, or to require class-wide arbitration in such cases, are decisions better left to the General Assembly, which can balance the right of individuals to ensure statutory compliance against the potential effect of such rules on the costs of health care. *See, e.g., Johnson v. West Suburban Bank, supra* (rejecting argument that arbitration should be precluded because it rendered class actions to enforce federal statutes unavailable, in absence of any indication of congressional intent); *Dorsey v. H.C.P. Sales, Inc.,* 46 F.Supp.2d 804 (N.D.Ill.1999) (court would not refuse to enforce arbitration clause based on asserted prohibitive cost to plaintiff where Congress had implemented strong policy favoring arbitration agreements and had not authorized exception based on cost).

### III.

■ Finally, plaintiff contends that the arbitration provision is unconscionable, and thus unenforceable, because (1) it does not ensure that she will have adequate document discovery to substantiate her claims, (2) it gives defendant the initial right to select the slate of arbitrators from which she must choose, and (3) the obligation to arbitrate is not mutual. We are unpersuaded.

■ Given the disparity of bargaining power between an insurer and an insured, insurance policies are scrutinized carefully for provisions that unduly compromise the insured's interests. *Huizar v. Allstate Insurance Co., supra.*

■ However, in light of Colorado's strong policy favoring arbitration, valid agreements to arbitrate in insurance policies are to be enforced as written, "absent a conflicting and overriding public policy to the contrary in a particular situation." *Peterman v. State Farm Mutual Automobile Insurance Co.,* 961 P.2d 487, 493 (Colo.1998) (concluding that arbitration clause in policy was valid and enforceable but that insurer had waived its right to arbitration when it neglected to assert that right).

### A.

Under this standard, the arbitration provision here may not be set aside as unenforceable on the basis that it does not provide for document discovery.

As plaintiff points out, the arbitration provision does not expressly permit document discovery, although it gives each party the right to take one lay deposition and one expert deposition and requires the parties to exchange copies of all exhibits to be used at the arbitration. Further, it does not specify whether arbitration is to be conducted pursuant to the AAA Commercial Arbitration Rules, which specifically address production of documents, or the AAA Insurance Claims Dispute Resolution Procedures, which do not.

However, § 13–22–209(1), C.R.S.2000, provides that arbitrators may issue subpoenas for the production of documents and other evidence and that a party may apply to the court for enforcement of such subpoenas. We conclude that this statute and the rights expressly provided in the arbitration provision are adequate to provide plaintiff with the discovery she needs to establish her claims. *See also Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) (rejecting argument that limited discovery allowed in arbitration would make it difficult for claimant to prove

age discrimination and noting that such limitations are offset by the simplicity, informality, and expedition of arbitration).

### B.

We also disagree with plaintiff's contention that the arbitration provision is unenforceable because it provides that defendant "shall provide the Member with a list of three neutral arbitrators from which the Member shall select his or her choice of arbitrator for the arbitration." While we recognize the potential fairness concerns raised by provisions permitting one side to choose the initial slate of arbitrators, *see, e.g., Hooters of America, Inc. v. Phillips,* 173 F.3d 933 (4th Cir.1999), we conclude that there are sufficient safeguards here to protect plaintiff's right to a neutral decision-maker.

The arbitration provision by its terms requires that the arbitrator be neutral ("the arbitration shall be conducted by a single, neutral arbitrator who is licensed to practice law"). Further, both the AAA Commercial Arbitration Rules and the AAA Insurance Claims Dispute Resolution Procedures require disclosure of circumstances that may affect the arbitrator's impartiality, require the AAA to communicate such information to the parties, and provide that the parties may comment on the proposed arbitrator to the AAA, which then determines whether the person is to be disqualified. Similarly, § 13–22–205, C.R.S.2000, provides that a court, on application of a party, shall appoint the arbitrator if the method of appointment set forth in their contract "fails or for any reason cannot be followed." In light of these safeguards, we cannot conclude that the policy's mechanism for selecting arbitrators renders the arbitration provision unenforceable.

### C.

Finally, the fact that other provisions in the policy afford remedies to defendant, but not to plaintiff, outside the arbitration process does not make the arbitration provision unenforceable.

■ Under Colorado law, every contractual obligation need not be mutual as long as each party has provided some consideration for the contract. *McCoy v. Pastorius,* 125 Colo. 574, 246 P.2d 611 (1952); *Sedalia Land Co. v. Robinson Brick & Tile Co.,* 28 Colo. App. 550, 475 P.2d 351 (1970).

Consistent with that principle, courts in other jurisdictions have declined to hold arbitration clauses void for lack of mutuality as long as the parties have provided each other with consideration beyond the promise to arbitrate. *See Harris v. Green Tree Financial Corp.,* 183 F.3d 173 (3d Cir.1999) (noting that most federal and state courts have held that mutuality is not a requirement of a valid arbitration clause, and summarizing state and federal cases so holding); *Dorsey v. H.C.P. Sales, Inc., supra.*

Here, each party to the contract has provided consideration—defendant, by provision of medical coverage, and plaintiff, by payment of premiums. In these circumstances, the arbitration provision is not unenforceable simply because it does not require defendant to arbitrate.

The judgment is affirmed.

METZGER and DAILEY, JJ., concur.