**SCOULAR COMPANY,**
**Plaintiff–Appellee,**

v.

**Doug DENNEY, Defendant–Appellant.**

**No. 05CA0200.**

Colorado Court of Appeals,
Div. V.

Nov. 2, 2006.

As Modified on Denial of Rehearing
Dec. 14, 2006.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2005.

McGloin, Davenport, Severson and Snow, P.C., Krista L. Tushar, Denver, Colorado, for Plaintiff–Appellee.

Block Markus Williams, L.L.C., Donald J. Quigley, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge DAILEY.

In this contract action, defendant, Doug Denney, appeals from the trial court's judgment entered in favor of plaintiff, Scoular Company. We reverse and remand with directions.

## I.

The parties have presented us with only a portion of the trial transcript. Consequently, the facts reported in this section of the opinion are taken from either undisputed portions of the briefs or the trial court's unchallenged findings of fact.

Denney is a grain farmer in Holyoke, Colorado. Scoular is a grain company headquartered in Omaha, Nebraska that operates a grain elevator in Venango, Nebraska. Denney grows, and Scoular buys and resells, millet, a grain used for, among other things, birdfeed.

Denney had had numerous dealings with Scoular in the past. On several occasions, he

had sold his grain on a "spot" sale basis, that is, without negotiating a contract beforehand. He simply arrived at the grain elevator with his crop and bargained for and received payment based on the market price prevailing at that time. On other occasions, he entered into "forward contracts" with Scoular, under which he agreed to deliver his crop to the elevator at some later time, for a price that was locked in as of the date the agreement was reached.

On May 30, 2002, Denney and Scoular discussed a forward contract for 15,000 bushels of millet. Although Denney indicated a desire to sell his millet, which had not yet been grown, at $5 per hundredweight of product, Scoular declared that that price was not then available. Four days later, however, Scoular, relying on Denney's offer, sold the millet to a buyer who purchased it at a rate sufficient to meet Denney's price. Scoular's general manager unsuccessfully tried several times to reach Denney by telephone to inform him of the sale, but Denney was out farming. On June 27, 2002, the general manager spoke with Denney and mailed him a written and signed purchase contract.

Denney did not check his mail. Consequently, he never signed or returned the purchase contract. When the millet was harvested and ready for delivery in the fall of 2002, the market price of millet had trebled. Denney delivered his millet not to Scoular, but to a grain operator in Paoli, Colorado. When Scoular asked why he had not delivered the millet to it, Denney purportedly remarked that it was "too bad" Scoular did not have a signed contract.

Thereafter, Scoular instituted the present action for monetary damages, based on claims of breach of contract, promissory estoppel, and unjust enrichment. In his answer, Denney denied any liability and counterclaimed for damages arising from Scoular's alleged conversion of wheat that he had placed with it in "open storage."

After a bench trial, the trial court determined that (1) Denney had entered into and breached an enforceable contract to sell 15,000 bushels of millet to Scoular at $5 per hundredweight of product and (2) Scoular was entitled to recover $82,500 in damages arising from Denney's breach. The court did not address Scoular's alternative theories for relief.

With respect to Denney's counterclaim, the court determined that Scoular had converted Denney's wheat and, consequently, was liable to him for $9,875.27 in damages.

After offsetting these figures, and factoring in prejudgment interest, the trial court entered a $77,484.56 judgment in favor of Scoular. Denney now appeals.

## II.

On appeal, Denney contends that the trial court erred in concluding that he had entered into an enforceable contract with Scoular to sell millet. Although a contract is formed when an offer is accepted, *Williams v. Chrysler Ins. Co.*, 928 P.2d 1375, 1379 (Colo. App.1996), Denney asserts that (1) under § 4–2–101, et seq., C.R.S.2006, Colorado's version of the Uniform Commercial Code (UCC), he could not be bound to a contract based only on his oral offer to sell; (2) contrary to the trial court's conclusion, Scoular's contracting to sell the millet to a third party did not constitute an acceptance of his offer; and (3) if a contract was entered into, it was not enforceable because it was not in writing and signed by both parties.

Before addressing these substantive issues, we note that Denney did not provide us with a transcript of the trial, and that Scoular provided us with only a transcript of the direct examination of its general manager.

As the appellant, Denney is responsible for providing an adequate record to support his claims of error. *See Newport Pac. Capital Co. v. Waste*, 878 P.2d 136, 139 (Colo.App.1994). Without an entire transcript, our deliberations must be "guided by the presumption that the evidence fully supports the findings of fact made by the trial court and only if the court erroneously applied the law to the findings may we disturb the judgment below." *Henry v. Latta*, 472 P.2d 694, 695 (Colo.App.1970)(not published pursuant to C.A.R. 35(f) ).

With these principles in mind, we now turn to a consideration of Denney's arguments

about the offer, acceptance, and purported contract in this case.

### III.

■ Denney contends that, under § 4–2–205, C.R.S.2006, he could not be bound by what the trial court referred to as a "firm offer" because the offer had not been made in writing. We disagree.

Section 4–2–205 provides, with respect to "firm offers":

> An offer by a merchant to buy or sell goods in a signed writing which by its terms gives assurance that it will be held open is not revocable, for lack of consideration, during the time stated or, if no time is stated, for a reasonable time, but in no event may such period of irrevocability exceed three months; but any such term of assurance on a form supplied by the offeree must be separately signed by the offeror.

As Denney notes, the purpose of the section is "to modify the former rule which required that 'firm offers' be sustained by consideration in order to bind, and to require instead that they must merely be characterized as such and expressed in signed writings." Section 4–2–205 cmt. 1. As the language of § 4–2–205 itself makes clear, as used in the comment, the term "bind" means only to make irrevocable.

Indeed, as noted by one leading treatise, under common law "it was frequently said 'an offeror can always withdraw an offer if no consideration was received for it.'" 1 James J. White & Robert S. Summers, *Uniform Commercial Code* § 1–4 (4th ed.1995). "Section 2–205 is intended mainly to limit the power of an offeror to withdraw a firm offer when the offeree reasonably relies on the offer's firmness." 1 White & Summers, *supra,* § 1–4.

Thus viewed, the purpose of § 4–2–205 is only to establish a type of offer that, although not supported by consideration, is nonetheless irrevocable; § 4–2–205 is not intended to provide the exclusive mechanism by which a valid (though perhaps revocable) offer can be made. *See* 2 Lary Lawrence, *Anderson on the Uniform Commercial Code* § 2–206:12 (3d ed. 2004) ("The Code does not displace the non-Code law as to what constitutes an offer, which therefore continues under the Code.").

■ Here, the trial court found that Denney had made a "firm offer" as that term is employed in the grain industry. In that industry, the term "firm offer" refers to a standing offer by a producer to sell a set amount of bushels, at a set price, for a set delivery date. Consistent with ordinary common law contract principles, and comment 2 to § 4–2–205, this type of oral offer remains open and viable until the producer revokes it. Section 4–2–205 cmt. 2 (firm offers made by oral communication and relied upon without more evidence "remain revocable under this Article"); *E.-Larimer County Water Dist. v. Centric Corp.,* 693 P.2d 1019, 1021 (Colo.App.1984) ("an offer to contract may be withdrawn at any time prior to acceptance").

Thus, we conclude that Denney's oral offer could, if timely accepted, form the basis of a valid contract.

### IV.

Denney also contends that the trial court erred when it found that Scoular had accepted his offer. We conclude that a remand for further findings is necessary.

■ Unless otherwise specified by its terms, an offer may be accepted within a reasonable time unless the offer has been revoked by the offeror or rejected by the offeree. *Minneapolis & St. Louis Ry. v. Columbus Rolling–Mill Co.,* 119 U.S. 149, 151, 7 S.Ct. 168, 170, 30 L.Ed. 376 (1886); *see also Townsend v. Daniel, Mann, Johnson & Mendenhall,* 196 F.3d 1140, 1145 (10th Cir. 1999)("Once the offer was rejected, it must be renewed again in its entirety before it can be accepted."); *Cent. Inv. Corp. v. Container Adver. Co.,* 28 Colo.App. 184, 187, 471 P.2d 647, 648 (1970)("The test for an offers' duration in the absence of an express or implied limitation is a 'reasonable time.'"). *E.-Larimer County Water Dist. v. Centric Corp., supra; Sigrist v. Century 21 Corp.,* 519 P.2d 362, 363 (Colo.App.1973) (not published pur-

suant to C.A.R. 35(f) )("Offers to enter into either bilateral or unilateral contracts may not be revoked after acceptance.").

Denney asserts that his offer was not open for acceptance because Scoular had rejected it on May 30, 2002 when Scoular failed then to agree to pay the price he was asking. However, the trial court did not find that Scoular had rejected the offer, or that Scoular had indicated that it would not pay that price. The trial court found only that, on May 30, the requested price was "not then available."

Indeed, according to the transcript provided by Scoular, on May 30, Scoular's general manager told Denney only that "at that particular time [he] could not" pay that price, but that he would "work on it [and] see what [he could] do." In our view, Scoular's response on May 30 was not, as a matter of law, a rejection of Denney's offer. *See Collins v. Thompson,* 679 F.2d 168, 171 (9th Cir.1982) (because offeree's statement that it would take offer under further advisement was not a rejection of the offer, the offer remained open); Restatement (Second) of Contracts § 38 (1981)(same).

Denney also asserts, and we agree, that the trial court erred in concluding that Scoular accepted his offer when it arranged to sell his millet to another buyer.

Section 4–2–206, C.R.S.2006, provides:

(1) Unless otherwise unambiguously indicated by the language or circumstances:

(a) An offer to make a contract shall be construed as inviting acceptance in any manner and by any medium reasonable in the circumstances....

(2) Where the beginning of a requested performance is a reasonable mode of acceptance, an offeror who is not notified of acceptance within a reasonable time may treat the offer as having lapsed before acceptance.

Acceptance is defined as words or conduct that, when objectively viewed, manifests an intent to accept the offer. 2 Lawrence, *supra,* § 2–206:38. When, under § 4–2–206(2), an offeree relies on the beginning of performance as the mode of acceptance, the offeree's actions must be such as to "unambiguously express the offeree's intention to engage himself." Section 4–2–206 cmt. 3. Whether there has been acceptance is determined by an objective or reasonable person standard. *Joseph Heiting & Sons v. Jacks Bean Co.,* 236 Neb. 765, 463 N.W.2d 817, 821 (1990).

"The Code, with one exception, does not alter the general rule that communication is required of the acceptance of the offer for a bilateral contract while it is not required of the acceptance of the offer for a unilateral contract." 2 Lawrence, *supra,* § 2–206:55. The exception to the general rule applies when the offeree relies on the beginning of performance as the mode of acceptance, and, in that instance, the offeree must notify the offeror of the acceptance within a reasonable time. 2 Lawrence, *supra,* § 2–206:55.

Here, the trial court concluded that "the contract was made [by the] 'acceptance' of the firm offer of Mr. Denney when Scoular sold Mr. Denney's millet on June 3, 2002." In our view, however, Scoular's act in contracting to sell millet to a third party did not constitute acceptance.

We reject the notion that Scoular's contract with a third party effected an acceptance, either on the ground that it constituted performance in response to an offer for a unilateral contract (thus, requiring no further notice to Denney) or on the ground that it was, under § 4–2–206(2), the beginning of performance under a bilateral contract (allowing for a delayed notice to Denney).

An offer requesting a return performance rather than a promise to perform is a unilateral contract. *Stortroen v. Beneficial Fin. Co.,* 736 P.2d 391, 399 (Colo.1987); *see also McCoy v. Pastorius,* 125 Colo. 574, 582, 246 P.2d 611, 615 (1952)("A unilateral contract is one which is supported by an executed consideration."). Here, Denney did not ask Scoular to broker a sale of his millet to another. He offered to sell his millet to Scoular, and the performance he desired was payment of money. Inasmuch as Scoular did not immediately pay Denney as a result of its contract with the third party, Scoular cannot be held to have rendered performance consti-

tuting acceptance of an offer for a unilateral contract.

Similarly, because Scoular did not begin paying Denney as a result of its contract with the third party, Scoular cannot be held to have begun the performance that would have constituted acceptance of an offer to enter into a bilateral contract.

Further, even if Scoular's contracting with the third party could be considered "beginning performance" (that is, setting up the circumstances to make payment possible) in response to an offer for a bilateral contract, we would nonetheless conclude that it would not qualify as "acceptance" under § 4–2–206(2).

■■ Whether a particular medium is "reasonable under the circumstances" to constitute acceptance, and whether there has been an acceptance, as determined by a reasonable person standard, are ordinarily questions of fact for a factfinder to resolve. *See Sherkate Sahami Khass Rapol v. Henry R. Jahn & Son, Inc.*, 701 F.2d 1049, 1051 (2d Cir.1983) (application of reasonableness standard generally presents a question of fact); *Lazy Dog Ranch v. Telluray Ranch Corp.*, 965 P.2d 1229, 1241 (Colo.1998) (reasonableness determination is largely question of fact); *Lockhart v. Elm*, 736 P.2d 429, 431 (Colo.App.1987)(acceptance is a question of fact to be determined by trial court); *Hougum v. Valley Mem'l Homes*, 574 N.W.2d 812, 818 (N.D.1998)(application of reasonable person standard ordinarily presents a question of fact).

■■ However, as with all factual issues, these matters become questions of law if reasonable persons could draw only one conclusion from the evidence. *See, e.g., Rich Prods. Corp. v. Kemutec, Inc.*, 66 F.Supp.2d 937, 964 n. 22 (E.D.Wis.1999), *aff'd*, 241 F.3d 915 (7th Cir.2001); *cf. Hoang v. Arbess*, 80 P.3d 863, 869 (Colo.App.2003) (directed verdict proper only when reasonable persons could not disagree about the outcome).

Here, the record reveals that Scoular deals with a great number of farmers and in vast amounts of grain. As pertinent here, Scoular did nothing in or with the contract with the third party to earmark Denney's millet

as the source of the millet sold there. Viewed from the perspective of an objective, reasonable person, Scoular was free to use, or plan on using, any number of farmers' millet to satisfy the demands of the contract with the third party. Under the circumstances, we conclude that the transaction with the third party was too open-ended to constitute an unambiguous expression of intent on Scoular's part to be bound to a contract with Denney.

This conclusion, however, does not end our inquiry, for the limited record presented to us on appeal suggests that Scoular accepted Denney's offer during a telephone conversation on June 27, 2002. According to the testimony of Scoular's general manager, an agreement between the parties was reached over the phone. And following the conversation, Scoular sent Denney a written purchase contract, on the face of which appears the notation, "Thanks Doug!" above the signature of Scoular's general manager.

The trial court made no explicit findings regarding the contents of the telephone conversation. The court found only that the purchase contract was a confirmation of the contract discussed over the phone. Arguably, in so finding, the trial court implicitly determined that, during the phone conversation, Scoular expressed its assent to, and thus accepted, Denney's offer. However, in view of the court's finding that the contract had been formed at an earlier time, as a result of Scoular's conduct, the implication is too tenuous to uphold the trial court's judgment with any degree of confidence. Consequently, a remand is necessary for the trial court to determine whether, during the phone conversation, Scoular accepted or Denney revoked the offer. *See People v. Brazzel*, 18 P.3d 1285, 1289 (Colo.2001)("when the absence of factual findings regarding key contested issues hinders appellate review, or when unresolved evidentiary conflicts exist with regard to material facts, we remand the case to the trial court for further fact-finding").

The consequences of the trial court's determination on remand are these: If, during the phone conversation, Denney revoked the offer before Scoular could accept it, there was

no contract. If, however, Scoular accepted the offer, either without disagreement from Denney or before Denney attempted to revoke it, there was an enforceable contract.

We reach this latter conclusion, despite Denney's assertion that any contract would be unenforceable because of a failure to meet the ordinary requirements of § 4–2–201(1), C.R.S.2006, Colorado's version of the statute of frauds provision of the UCC.

Under § 4–2–201(1) and U.C.C. § 2–201(1), contracts for the sale of goods at a price of $500 or more must ordinarily be in writing and signed by the party against whom enforcement of the contract is sought. Although "[t]he exceptions to U.C.C. § 2201 cannot be enlarged by usage or trade," 1A Lawrence, *supra*, § 1–205:54, the trial court found, without objection, that the type of contract at issue here fell within the "merchant exception" to the statute of frauds.

Under that exception, the statute of frauds is satisfied between merchants "if, within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received[,] ... the party receiving it has reason to know its contents," and written objection to its contents is not "given within ten days after it is received." Section 4–2–201(2), C.R.S.2006.

Here, Denney does not dispute that the purchase contract sufficed as a written confirmation of an agreement; and he does not challenge on appeal either his receipt of the purchase contract or his having failed to object to it within the requisite ten days. If Scoular accepted his offer on the day it sent out the purchase contract, there can be no assertion of unreasonable delay in sending out the written confirmation. Thus, if, on remand, the trial court determines there was a contract as a result of the June 27, 2002, telephone conversation, that contract is to be enforced.

Accordingly, the judgment is reversed, and the case is remanded to the trial court to make additional findings and determinations consistent with the views expressed in this opinion.

## UPON PETITION FOR REHEARING

So far as we can tell from the record before us, in his petition for rehearing Denny contends for the first time in the case that his offer had lapsed by the time the parties talked over the phone on June 27, 2002. Because this contention was not raised in either of Denny's briefs, we consider it not properly before us and, consequently, do not address it. *See Elrick v. Merrill*, 10 P.3d 689, 696 (Colo.App. 2000); *Kelly v. Cent. Bank & Trust*, 794 P.2d 1037, 1044-45 (Colo. App. 1989).

Denny's petition for rehearing is denied.

Judge HAWTHORNE and Judge FURMAN concur.